170 P.3d 24 (2007)
STATE of Washington, Respondent,
v.
Mitchell Lee VARNELL, Petitioner.
No. 78979-7.
Supreme Court of Washington, En Banc.
Argued June 14, 2007.
Decided November 8, 2007.
*25 Eric Broman, Nielsen Broman & Koch PLLC, Seattle, WA, for Petitioner.
Seth Aaron Fine, Attorney at Law, Charles Franklin Blackman, Snohomish County Prosecutor's Office, Everett, WA, for Respondent.
C. JOHNSON, J.
¶ 1 This case asks us to determine whether a solicitation in a single conversation to murder four people constitutes a single unit of prosecution of solicitation to commit murder. The State charged Mitchell Lee Varnell with five counts of soliciting murder based on two conversations. At issue in this case is the second conversation, which arose from Varnell's discussion with an undercover detective in which Varnell asked the detective to murder four individuals. The jury found Varnell guilty on all five counts. The Court of Appeals affirmed. We reverse and vacate three convictions.[1]

FACTUAL AND PROCEDURAL HISTORY
¶ 2 After 17 years of marriage, Varnell and his wife, Karen, endured a bitter divorce. Sometime later, Varnell asked Mary Wilson, his employee, to kill Karen for $50,000. Wilson declined Varnell's offer and decided to contact Karen, who contacted the police.
¶ 3 The police asked Wilson to call Varnell to tell him she met someone who would agree to kill Karen. The call was recorded. Later, an undercover detective contacted Varnell, identifying himself as Wilson's acquaintance. Arrangements were made for Varnell and the detective to meet, which they did, where Varnell asked the undercover detective to kill Karen, her parents, and her brother. Varnell paid the detective $100 as down payment. The conversation was secretly recorded. Minutes after this conversation the police arrested Varnell.
¶ 4 Varnell was charged with five counts of soliciting murder. One count was based on Varnell's conversation with Wilson; the other four counts originated from the single conversation Varnell had with the undercover detective. The jury found Varnell guilty on all five counts. Varnell appealed on several grounds, including whether his solicitation in a single conversation to murder four people constituted a single unit of prosecution of solicitation to commit murder. The Court of Appeals affirmed Varnell's conviction on all five counts. We granted Varnell's petition for review on the unit of prosecution issue only.[2]

ISSUE
¶ 5 Whether Varnell's single conversation with an undercover detective constituted four units of prosecution under RCW 9A.28.030 when that single conversation contained a solicitation to commit four separate murders.

ANALYSIS
¶ 6 The legal foundation for the unit of prosecution analysis rests on double jeopardy protections. While the issue is one of constitutional magnitude on double jeopardy grounds, the analytical framework centers around a question of statutory interpretation and legislative intent. See State v. Adel, 136 Wash.2d 629, 965 P.2d 1072 (1998).
¶ 7 The proper question is to determine what act or course of conduct the legislature has defined as the punishable act. When the legislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects against multiple convictions for committing just one unit of the crime. Adel, 136 Wash.2d at 634, 965 P.2d 1072 (citing Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).
*26 ¶ 8 In a unit of prosecution case, the first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present. State v. Bobic, 140 Wash.2d 250, 263-66, 996 P.2d 610 (2000).
Solicitation Statute; RCW 9A.28.030
The relevant portion of the statute at issue in this case provides:
(1) A person is guilty of criminal solicitation when, with intent to promote or facilitate the commission of a crime, he offers to give or gives money or other thing of value to another to engage in specific conduct which would constitute such crime. . . .
RCW 9A.28.030(1).
¶ 9 The language of the solicitation statute focuses on a person's "intent to promote or facilitate" a crime rather than the crime to be committed. The evil the legislature has criminalized is the act of solicitation. The number of victims is secondary to the statutory aim, which centers on the agreement on solicitation of a criminal act. The statute requires only that the solicitation occur. That is, where a person offers to give money or some other thing of value to another to engage that person to commit a crime. The solicitation has occurred regardless of the completion of the criminal act.
¶ 10 In an analogous statutory interpretation, we reviewed the conspiracy statute and reached the same conclusion. In Bobic, 140 Wash.2d 250, 996 P.2d 610, two defendants were charged with numerous crimes arising from a sophisticated auto theft conspiracy. The defendants were convicted of conspiracy to commit first degree theft, conspiracy to commit first degree possession of stolen property, and conspiracy to commit first degree trafficking in stolen property. Defendants were convicted of other crimes not relevant here. We reasoned that the appropriate focus under the statute is on the conspiratorial agreement and not the specific separable criminal acts. We supported our conclusion by noting that the essential elements of a conspiracy are an agreement to commit a crime and taking a substantial step toward the completion of that agreement. Bobic, 140 Wash.2d at 265, 996 P.2d 610.
¶ 11 As further support, we noted that conspiracy is an inchoate crime. To obtain a conviction, all a prosecutor needs to prove is that the conspirators agreed to undertake a criminal scheme and that they took a substantial step in furtherance of the conspiracy. Bobic, 140 Wash.2d at 265, 996 P.2d 610. The defendants need not commit any other crime.
¶ 12 That same reasoning applies under the solicitation statute. Both solicitation (RCW 9A.28.030) and conspiracy (RCW 9A.28.040(1)) are statutorily listed as "[a]nticipatory offenses." Solicitation and conspiracy are under the same statutory section. Both solicitation and conspiracy are characterized as "inchoate" crimes. In order to commit the crime of solicitation, all the State needs to prove is the defendant offers something of value in order to facilitate a crime. The fact that no crime is actually committed is no defense under the statute. Both solicitation and conspiracy exist independent of any crimes actually committed pursuant to the agreement of solicitation or conspiracy.
¶ 13 We conclude that the solicitation statute, as does the conspiracy statute, criminalizes the act of engaging another to commit a crime. The unit of prosecution is centered on each solicitation regardless of the number of crimes or objects of the solicitation.
¶ 14 We turn next to the solicitation statute's history. Our Bobic decision detailed the extensive legislative history of Washington's conspiracy statute, a statute that has remained unchanged since our holding in that case. Washington's present solicitation statute has little legislative history. The original solicitation statute was enacted in 1975 during an extraordinary session of the legislature and has remained unchanged since its initial passage. Laws of 1975, 1 st ex.s., ch. 260, at 833. The crime of solicitation is categorized by the legislature under "[a]nticipatory offenses" in chapter 9A.28 RCW along with the crimes of criminal attempt and criminal conspiracy. No mention *27 is made anywhere in the legislative history of the solicitation statute (or any of the "anticipatory offenses" in chapter 9A.28 RCW) that the legislature intended to punish a defendant multiple times for committing a single solicitation or conspiracy with multiple objectives. Therefore, the analysis of legislative history does not preclude our finding that the solicitation statute intends to punish only the person's "intent to promote or facilitate" criminal activity, no matter how many criminal objectives are involved. Further, when the legislature enacts a statute, it is presumed to be familiar with judicial interpretations of statutes. Bobic, 140 Wash.2d 250, 996 P.2d 610. Significantly, since our decision in Bobic, the legislature has amended none of the anticipatory offense statutes.
¶ 15 However, the analysis of legislative intent does not end our unit of prosecution analysis. The final step involves the factual situation each case presents. Turning to the factual analysis, we necessarily must ask whether the facts in this case may reveal more than one unit of prosecution because, as we said in Bobic, multiple conspiracies may be charged where the facts of the case support multiple criminal agreements. Bobic, 140 Wash.2d at 266, 996 P.2d 610. In Bobic, we cited a Court of Appeals case that looked to whether the time, persons, places, offenses, and overt acts were distinct in deciding if multiple conspiracies were present. Bobic, 140 Wash.2d at 266, 996 P.2d 610 (citing State v. Walker, 24 Wash.App. 78, 81, 599 P.2d 533 (1979)). In Walker, the Court of Appeals affirmed the trial court's judgment that the defendant's three counts of conspiracy were valid because the defendant's agreements occurred between defendant and three separate persons, at different times, places, and for somewhat different purposes.
¶ 16 Here, however, Varnell's solicitation to the undercover detective to commit the four murders was made only to the detective, at the same time, in the same place, and for the same motive. This scenario constitutes a single unit of prosecution. The result logically flows from the fact that the appropriate focus of the crime of solicitation in Washington is on the enticement, not the specific criminal object or objects. Here, the focus is appropriately on the single conversation between Varnell and the detective when Varnell, with intent to facilitate a crime, offered the detective money to engage in specific conduct. The focus is not on the future criminal conduct the detective may have engaged in, but on the solicitation by Varnell to so engage. Under these circumstances, only one solicitation occurred. In further support of this result, we note that the solicitation conviction supported by the conversation with Mary Wilson  although not before us  does factually support a separate solicitation conviction. Varnell offered Wilson something of value to promote or facilitate a crime. This conversation and solicitation is separate and distinct from the solicitation of the undercover officer and supports the separate conviction.

CONCLUSION
¶ 17 We hold, on the facts of this case, Varnell's solicitation in a single conversation to the detective to murder four people constituted a single unit of prosecution of solicitation to commit murder.[3] We reverse and vacate three convictions and remand for resentencing.
WE CONCUR: GERRY L. ALEXANDER, C.J., TOM CHAMBERS, SUSAN OWENS, BARBARA A. MADSEN, MARY E. FAIRHURST, RICHARD B. SANDERS, JJ.
J.M. JOHNSON, J. (dissenting).
¶ 18 May a jury convict a defendant of four murder solicitations for offering a hit man $60,000 to kill his ex-wife and three family members? I would affirm the jury conviction of four solicitation charges as correct under the statute and consistent with legislative intent. Accordingly, I respectfully dissent from the majority, which reverses three of those charges.
¶ 19 The facts of this case are simple. The defendant, Mitchell Varnell, had first offered *28 an employee $50,000 to kill his ex-wife,[1] who had been awarded custody of their two children. The employee refused and informed the police, who set up a sting operation.
¶ 20 Varnell later arranged to meet with an undercover officer in a restaurant. Believing the officer was a hit man, Varnell offered $60,000 to kill his ex-wife, then to go to a different house and kill her mother, her father, and her brother. The officer checked to make sure Varnell wanted all four killed, and Varnell responded "Four don't mean three, four don't mean one . . . four means four." Clerk's Papers at 47. Varnell described the two different homes and the security systems of each in some detail. He was arrested and the jury convicted him of four counts of solicitation for the restaurant transaction  one for each person to be killed. He now claims he may only be convicted of one count of solicitation for hiring a hit man to kill these four people.
¶ 21 A defendant may be punished only once for each unit of crime a statute proscribes. U.S. CONST. amends. V, XIV;[2] WASH. CONST. art. I, § 9.[3] The unit of punishment inquiry is always fact-specific and must proceed on a case-by-case basis. State v. Adel, 136 Wash.2d 629, 640, 965 P.2d 1072 (1998) (Talmadge, J., concurring). The analysis must begin with the criminal statute as adopted by the legislature.
¶ 22 A person commits criminal conspiracy when, "with intent to promote . . . the commission of a crime, he offers . . . money . . . to another to engage in specific conduct which would constitute such crime." RCW 9A.28.030(1) (emphasis added). In this case, the crime for which Varnell offered money is first degree murder,[4] and each "such crime" is a separate unit of prosecution. Cf. State v. Tili, 139 Wash.2d 107, 117, 985 P.2d 365 (1999); see also Burroughs v. State, 88 Md. App. 229, 247, 594 A.2d 625 (1991) (holding each murder victim a separate unit of prosecution for homicide).
¶ 23 In State v. Ose, 156 Wash.2d 140, 142, 124 P.3d 635 (2005), we had to decide the unit of prosecution for possessing a stolen access device when a woman had 25 stolen credit cards. We held each credit card was a unit of prosecution because the statute criminalizing the act punished possession of "a stolen access device." RCW 9A.56.160(1)(c). "[B]ecause the word `a' is used only to precede singular nouns . . . the legislature's use of the word `a' . . . unambiguously" meant the unit of punishment was each stolen credit card. Ose, 156 Wash.2d at 146, 124 P.3d 635.
¶ 24 Here, the statute punishes those who, "with intent to promote . . . commission of a crime . . . offers . . . money . . . to another to engage in specific conduct which would constitute such crime." RCW 9A.28.030(1) (emphasis added). Just as in Ose, the word "a" makes the unit of punishment each crime solicited. See also State v. Root, 141 Wash.2d 701, 710-11, 9 P.3d 214 (2000) ("a minor" makes the unit of prosecution each minor); State v. DeSantiago, 149 Wash.2d 402, 419, 68 P.3d 1065 (2003) ("a firearm" means the prosecution unit is each firearm); State v. Graham, 153 Wash.2d 400, 406-07, 103 P.3d 1238 (2005) ("a person" means defendant may be prosecuted for each person endangered). Since Varnell offered money to a hit man to commit four crimes, he may be punished for four solicitations. That commonsense analysis should resolve this case.
¶ 25 The majority errs from the beginning by misstating the issue as whether "a solicitation in a single conversation to murder four people constitutes a single unit of prosecution of solicitation to commit murder." Majority at 25. But that is not the issue. The proper *29 issue is whether Varnell committed solicitation for one murder or solicitations for four murders, and that was properly resolved by a jury. To begin by assuming there was a solicitation leads the majority to an erroneous conclusion, which overlooks the four prospective victims. The fact that there were separate locations for the murders further indicates the multiple "such crime(s)" solicited.
¶ 26 The majority next contends "the solicitation statute focuses on a person's `intent to promote or facilitate' a crime rather than the crime to be committed." Majority at 26. This also misunderstands the legislature's intent. The statute prohibits the offer of money to commit "a crime" or "such crime." The solicitor's intent is simply the mental state required. The legislature did not punish the mental state, but rather criminalized solicitation for each "such crime."
¶ 27 The majority then contends the statutory intent was to criminalize "the agreement on solicitation of a criminal act." Majority at 26. This is contrary to legislative intent, and indeed the word "agreement" does not appear in this statute. A solicitor can be punished absent an agreement because the criminal act proscribed by the statute is the offer or solicitation. The best police technique to thwart such a crime is that utilized here: using an officer or informant who will never actually agree to commit "such crime." Again, the statutory intent is to penalize an offer of money to commit a specific crime.
¶ 28 The primary support for the majority holding is the opinion's comparison between solicitation and conspiracy. Majority at 26. This is an inapt comparison for several reasons. First, unlike the solicitation statute, the criminal conspiracy statute punishes the agreement to engage in or cause criminal conduct.[5] For that reason, we held in State v. Bobic, 140 Wash.2d 250, 262, 996 P.2d 610 (2000), that the unit of punishment for conspiracy is the agreement. But the solicitation statute does not punish an agreement; it punishes each offer to commit each "such crime." If the hired conduct would constitute multiple crimes, then there are multiple units of prosecution.
¶ 29 The majority also points out that both solicitation and conspiracy are inchoate crimes. Majority at 26. But the inchoate nature of the crime has no relation to the unit of prosecution. Attempt is also an inchoate crime. Surely a person firing a gun at four people in separate houses can be charged  and found guilty  of more than one attempted murder. The inchoate nature of the crime is not determinative of the unit of prosecution.
¶ 30 Most important, the legislature intended to punish separate evils when it criminalized conspiracy and solicitation in different statutes, with differing penalties. One prime rationale for punishing solicitation is to deter crimes that are difficult to solve. In 2003, 77.6 percent of homicide victims knew their assailants. Press Release, Federal Bureau of Investigations, FBI Releases Crime Statistics for 2003 (Oct. 25, 2004), available at http://www.fbi.gov/pressrel/pressre104/ crimestat102504.htm. So in over three quarters of all murders, police can solve the crime, or at least identify prime suspects, by finding and questioning those who knew the victim.
¶ 31 But murders procured through solicitation, like those proposed here, are nearly always committed by people the victims do not know. This makes it far more difficult for police to find the killer. Since each crime solicited is equally difficult to track, the statute provides that each "such crime" would constitute a separate unit of prosecution.
¶ 32 The same is not true of conspiracies. The legislature criminalizes conspiracies to accomplish at least three ends: to deter the economies of scale inherent in conspiracies, to limit creation of pernicious group identities, and to give investigators a carrot to entice coconspirators to implicate one another. Neal Kumar Katyal, Conspiracy Theory, 112 Yale L.J. 1307, 1312 (2003). Each of these reasons justifies punishment for the agreement, and not the underlying crime. Thus, *30 the agreement is the unit of prosecution for conspiracies. The same is simply not true of solicitation.
¶ 33 The solicitation and conspiracy statutes are substantially different when delimiting the crime punished because the legislature was punishing separate ills by criminalizing solicitation and conspiracy. Here, the only clear similarity between the two crimes  and the clearest rationale for the majority's holding  is their adjoining codification in Washington's Revised Code. See majority at 26-27. This is not enough to reverse the Court of Appeals or the verdict of a jury, which heard the facts.
¶ 34 To illustrate further the error of today's majority decision, one need view the facts from the victims' perspective. It will come as a shock to Varnell's ex-in-laws to find out that Varnell hired a hit man to kill each of them in separate houses, but can only be prosecuted for one murder-for-hire, that for the wife. These potential victims were all "free" targets for the defendant.
¶ 35 Since the statute punishes for each crime solicited, and the jury determined, as Varnell had told the hit man, "four don't mean one . . . four means four," I respectfully dissent.
WE CONCUR: BOBBE J. BRIDGE, J.
NOTES
[1] Varnell was sentenced to 190 months on each conviction to run consecutively.
[2] The State filed a motion asking us to strike a portion of Varnell's supplemental brief. We deny the State's motion.
[3] Our holding does not affect or apply to Varnell's conviction of solicitation to commit murder stemming from Varnell's conversation with Mary Wilson.
[1] Varnell was separately convicted of one charge of solicitation for that offer, and he does not challenge that conviction. The jury heard all five counts of solicitation together, and found, beyond a reasonable doubt, that Varnell committed five solicitations of murder.
[2] "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." The Fourteenth Amendment applies this prohibition to the states. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
[3] "No person shall . . . be twice put in jeopardy for the same offense."
[4] A person commits first degree murder when "[w]ith a premeditated intent to cause the death of another person, he or she causes the death of such person." RCW 9A.32.030(1)(a).
[5] RCW 9A.28.040(1) punishes a person who "with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement."