[No. 82558-1.   En Banc.]
Argued January 26, 2010.     Decided April 22, 2010.

THE STATE OF WASHINGTON, *Respondent*, v. ISIAH THOMAS HALL, *Petitioner*.

*Jonathan M. Palmer*; and *Dana M. Lind* (of *Nielsen, Broman & Koch PLLC*), for petitioner.

*Daniel T. Satterberg*, *Prosecuting Attorney*, and *Dennis J. McCurdy*, *Deputy*, for respondent.

¶1 CHAMBERS, J. — We are asked to determine the unit of prosecution for the crime of witness tampering when the defendant makes multiple phone calls to a single witness in an attempt to persuade that witness not to testify or to testify falsely in a single proceeding. We conclude that Isiah Thomas Hall's numerous phone calls constituted one unit of attempting to "induce a witness" to not testify or to testify falsely. We reverse the Court of Appeals and remand to the superior court for resentencing.

I

¶2 Melissa Salazar briefly dated Hall in November and December 2006. Hall continued to press his attentions on Salazar after she broke off the relationship and after he suspected she was seeing another man. On January 14, 2007, he came to her apartment with a gun. When she stepped into the hall to talk to him, he drew that gun, pushed the barrel against her head, and announced his intent to kill her. He then shoved her down and forced his way into her apartment, where indeed he found another man. Hall then redirected his ire at that other man and chased him out of the house, gun raised. Upon realizing that Salazar was calling the police, Hall fled the scene.

¶3 Police contacted Desirae Aquiningoc because Hall had been driving a vehicle registered to her. Aquiningoc told the officers that Hall was her boyfriend, that he lived with her, that he had borrowed her car on that January 14 to visit his mother, and that he owned a gun. It appears that his purpose was not to visit his mother but rather to confront Salazar. The detective, assisted by members of a SWAT (special weapons and tactics) team, returned to Hall's home and arrested him. The gun was found in the master bedroom closet. Later, Aquiningoc would testify that

Hall told her he had shot at his mother's boyfriend on January 14 and that afterward he had taken the gun to a friend's house for a few days.

¶4 Based on what happened at Salazar's apartment, Hall was charged with first degree burglary and second degree assault and held in jail pending trial. While in jail, Hall attempted to call Aquiningoc over 1,200 times. During those phone calls, some of which were played for the jury, Hall attempted to persuade Aquiningoc that his legal woes were her fault and that she had a moral obligation not to testify or to testify falsely.[1]

¶5 Based on phone calls made on March 22, March 30, and April 4, Hall was charged with the four counts of tampering with a witness that are before us today. A jury convicted Hall of three of those counts (as well as first degree burglary, assault in the second degree, and unlawful possession of a firearm) and he was sentenced to a total of 126 months. The trial judge treated each count of witness tampering as a separate unit of prosecution.[2] His convictions were affirmed by the Court of Appeals, 147 Wn. App. 485, 196 P.3d 151 (2008), and Hall successfully petitioned this court for review of whether his multiple convictions for witness tampering violated double jeopardy, 166 Wn.2d 1005, 208 P.3d 1124 (2009).

II

¶6 Only a question of law is before this court. Review is de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005) (citing *State v. Johnston*, 100 Wn. App. 126, 137, 996 P.2d 629 (2000)). A defendant may face

---

[1] Phone calls made from the King County jail are automatically recorded. Given that all parties are very clearly informed of this, we held this practice does not violate a prisoner's statutory right to privacy. *State v. Modica*, 164 Wn.2d 83, 90, 186 P.3d 1062 (2008).

[2] Had the trial judge treated all three counts of witness tampering as a single unit of prosecution, it would have reduced Hall's offender score and thus the standard range for sentencing purposes. Hall was sentenced within the standard range based upon his offender score.

multiple charges arising from the same conduct, but double jeopardy forbids entering multiple convictions for the same offense. *Id.* at 770-71 (citing *State v. Michielli*, 132 Wn.2d 229, 238-39, 937 P.2d 587 (1997); *State v. Vladovic*, 99 Wn.2d 413, 422, 662 P.2d 853 (1983)). Whether or not a defendant faces multiple convictions for the same crime turns on the unit of prosecution. *State v. Westling*, 145 Wn.2d 607, 610, 40 P.3d 669 (2002) (citing *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998)).

## III

■■ ¶7 We must decide whether witness tampering is a continuing offense or whether it is committed anew with each single act of attempting to persuade a potential witness not to testify or to testify falsely. We recently summarized the general analytical approach to determine the unit of prosecution:

> [T]he first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present.

*State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007) (citing *State v. Bobic*, 140 Wn.2d 250, 263-66, 996 P.2d 610 (2000)). "[I]f the legislature fails to define the unit of prosecution or its intent is unclear, under the rule of lenity any ambiguity must be ' " resolved against turning a single transaction into multiple offenses." ' " *State v. Tvedt*, 153 Wn.2d 705, 711, 107 P.3d 728 (2005) (quoting *Adel*, 136 Wn.2d at 634 (quoting *Bell v. United States*, 349 U.S. 81, 84, 75 S. Ct. 620, 99 L. Ed. 2d 905 (1955))).

■ ¶8 The witness tampering statute says in relevant part:

> (1) A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to

believe is about to be called as a witness in any official proceeding . . . to:

(a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or

(b) Absent himself or herself from such proceedings.

RCW 9A.72.120(1). A unit of prosecution can be either an act or a course of conduct. *Tvedt*, 153 Wn.2d at 710; *see also Ex parte Snow*, 120 U.S. 274, 286, 7 S. Ct. 556, 30 L. Ed. 658 (1887).

¶9 In *Varnell*, 162 Wn.2d 165, we considered the unit of prosecution for solicitation for murder. The defendant solicited an undercover police detective to kill four people and was convicted of four separate counts. This court found that only one solicitation happened:

> The language of the solicitation statute focuses on a person's "intent to promote or facilitate" a crime rather than the crime to be committed. The evil the legislature has criminalized is the act of solicitation. The number of victims is secondary to the statutory aim, which centers on the agreement on solicitation of a criminal act. The statute requires only that the solicitation occur; that is, where a person offers to give money or some other thing of value to another to engage that person to commit a crime. The solicitation has occurred regardless of the completion of the criminal act.

*Id.* at 169. Hall argues we should take a similar approach here. He argues the evil the legislature has criminalized is the attempt to "induce a witness" not to testify or to testify falsely. The *number* of attempts to "induce a witness" is secondary to that statutory aim, which centers on interference with "a witness" in "any official proceeding" (or investigation). RCW 9A.72.120(1). The offense is complete as soon as a defendant attempts to induce another not to testify or to testify falsely, whether it takes 30 seconds, 30 minutes, or days. We agree.

¶10 By way of comparison, in *Tvedt* we found multiple units of prosecution did arise from the same course of conduct. There, a defendant was convicted of four counts of

robbery for robbing two convenience stores. Both a clerk and a customer were in each store. This court affirmed entry of four counts, noting:

> The language of RCW 9A.56.190 shows that the legislature's intent was to define the unit of prosecution in terms of a taking of personal property *and* in terms of an offense against the person from whom or in whose presence and against whose will the property is forcibly taken. The unit of prosecution need not be defined by only a single characteristic or element of a crime and the legislature has not done so.

*Tvedt*, 153 Wn.2d at 712. There, the unit of prosecution was each separate victim from whom or in whose presence property was forcibly taken. This followed from the language of the statute "that '[a] person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of force.'" *Id.* at 711 (alteration in original) (quoting RCW 9A.56.190). "By describing the crime of robbery as it did, the legislature established an offense which is dual in nature—robbery is a property crime and a crime against the person." *Id.* Thus, whenever both factors are met, a single unit of prosecution occurs. By contrast, witness tampering requires only an attempt to induce a witness to not testify or to testify falsely. RCW 9A.72.120(1).

¶11 A plainer case was presented in the context of stolen "access devices," such as credit and debit cards. *State v. Ose*, 156 Wn.2d 140, 146, 124 P.3d 635 (2005). There, the defendant pleaded guilty to 25 counts of second degree possession of stolen property under RCW 9A.56.160(1)(c), which provides that "[a] person is guilty of possessing stolen property in the second degree if . . . [h]e or she possesses a stolen access device." RCW 9A.56.160(1)(c); *Ose*, 156 Wn.2d at 143, 145. The defendant appealed based on the unit of prosecution. This court focused in on the legislature's choice of the indefinite article "a" in "a stolen access device" and rejected her challenge. We reasoned that "because the word 'a' is used only to precede singular nouns except when a plural modifier is interposed, the legislature's use of the

word 'a' before 'stolen access device' unambiguously gives RCW 9A.56.160(1)(c) the plain meaning that possession of each stolen access device is a separate violation of the statute." *Ose*, 156 Wn.2d at 146. The witness tampering statute does not say "an attempt," or "any attempt," which would bring the language more in line with *Ose*.

¶12 The State calls our attention to *State v. Alvarez*, 74 Wn. App. 250, 872 P.2d 1123 (1994), where the Court of Appeals found that a harassment charge could be based on one threat. *Id.* at 260. Under the harassment statute, a person was guilty if, among other things, he or she " 'knowingly threatens' " another. *Id.* at 255 (quoting RCW 9A.46-.020(1)(a)). The defendant argued that there has to be more than one threat, noting that the legislative statement of intent targeted " *'repeated invasions of a person's privacy by acts and threats which show a pattern of harassment.'* " *Id.* at 256 (quoting RCW 9A.46.010). The court noted that the legislature could have said "course of conduct" in the statute, but did not, and declined to import the language of the statement of intent into the elements of the statute. The State suggests that if the legislature intended a single unit of prosecution be based on a course of conduct, it would have said so plainly. However, the *Alvarez* court was answering a very different question than the one posed here: whether the court should "override the unambiguous elements section of a penal statute" by adding language from a statement of intent. *Id.* at 258. Here, we are simply interpreting the words set forth in the statute itself.

¶13 The State also argues that if the legislature intended witness tampering to be an ongoing offense, it would have used phrases similar to " 'engages in a pattern or practice' " or " 'repeatedly harasses or repeatedly follows' " or " 'at least two previous convictions.' " Suppl. Br. of Resp't at 10 & n.2 (citing RCW 9A.32.055 (homicide by abuse); RCW 9.46.0269 (gambling activity); RCW 26.50.110(5) (felony violation of a no contact order)). While we agree with the State that the language could have been more precise, in the statutes cited, repetition *is* an element of the sub-

stantive crime. By contrast, as the State properly notes, "[T]amper is a choate crime, complete when a single attempt of tampering is made." Suppl. Br. of Resp't at 10. No repetition is necessary. But that does not reveal the unit of prosecution.

¶14 The plain language of the statute supports the conclusion that the unit of prosecution is the ongoing attempt to persuade a witness not to testify in a proceeding. Assuming for the moment that the plain language does not resolve the matter before us, under *Varnell* we turn next to the history of the statute. In 1901, our legislature enacted the obstruction of justice statute that preceded our witness tampering statute. It provided:

> If any person shall wilfully and corruptly hinder, prevent, or endeavor to hinder, or prevent, any person from appearing before any court of justice as a witness, or from giving evidence, in any action or proceeding, with intent thereby to obstruct the course of justice, he shall be deemed guilty of the misdemeanor of tampering with a witness, and, upon conviction thereof, shall be punished by imprisonment in the county jail for any period not exceeding one year, or by fine not exceeding one thousand dollars, or both, in the discretion of the court.

LAWS OF 1901, ch. 17, § 1 (codified as former RCW 9.69.080, *repealed by* LAWS OF 1975, 1st Ex. Sess., ch. 260). Four years later this court found that a defendant "was guilty of the offense described in the statute, if he willfully and corruptly endeavored to prevent [a witness] from appearing as a witness in that case, or from giving evidence therein, with intent to obstruct the course of justice." *State v. Bringgold*, 40 Wash. 12, 20, 82 P. 132 (1905), *overruled on other grounds by State v. Hamshaw*, 61 Wash. 390, 112 P. 379 (1910). The unit of prosecution was not at issue in that case. In the 1970s, the legislature removed the requirement that the State prove the defendant intended to obstruct justice, possibly because of a constitutional challenge that the statute was vague or overbroad. *State v. Hegge*, 89 Wn.2d 584, 586, 574 P.2d 386 (1978). The last time the statute was significantly amended was in the mid 1990s, when the

legislature expanded it to encompass attempts to tamper with witnesses in child dependency cases, noting

> that witness intimidation and witness tampering serve to thwart both the effective prosecution of criminal conduct in the state of Washington and resolution of child dependencies.
>
> Further, the legislature finds that intimidating persons who have information pertaining to a future proceeding serves to prevent both the bringing of a charge and prosecution of such future proceeding.
>
> . . . .
>
> The legislature finds, therefore, that tampering with and/or intimidating witnesses or other persons with information relevant to a present or future criminal or child dependency proceeding are grave offenses which adversely impact the state's ability to promote public safety and prosecute criminal behavior.

LAWS OF 1994, ch. 271, § 201. Over the years, the statutory purpose has remained the same. "The obstruction of justice is the evil which the statute was designed to forestall." *State v. Stroh*, 91 Wn.2d 580, 582, 588 P.2d 1182 (1979). While this history is not determinative of the legislature's intended unit of prosecution, it is consistent with criminalizing the act of obstructing justice by tampering with a witness no matter how many calls are made in an attempt to accomplish the act.

¶15 The final consideration under *Varnell* is whether "the facts in a particular case may reveal more than one 'unit of prosecution' is present." 162 Wn.2d at 168. This principle played a part in *Jensen,* where this court found that three separate conversations, where the defendant attempted to solicit someone to kill a total of four people, was properly chargeable as two counts of solicitation to commit murder, not four. *State v. Jensen*, 164 Wn.2d 943, 195 P.3d 512 (2008). The court found that each time the defendant attempted to entice a new person to kill supported a separate charge. *Id.* at 958-59 ("a separate unit of prosecution arises when the facts support the conclusion the defendant enticed a different person, at a different time

and place, to commit a distinct crime"). But one of the three conversations in *Jensen* did not support a separate charge because it simply confirmed the details of an earlier one. *Id.* at 957. In this case, the course of conduct was continuous and ongoing, aimed at the same person, in an attempt to tamper with her testimony at a single proceeding. There is not the sort of separate efforts shown in *Jensen.*

¶16 The State urges and the Court of Appeals found persuasive a Wisconsin Court of Appeals case, *State v. Moore*, 2006 WI App 61, 292 Wis. 2d 101, 713 N.W.2d 131. The relevant statute uses similar language to our own: " 'Except as provided in s. 940.43, whoever knowingly and maliciously prevents or dissuades, or who attempts to so prevent or dissuade any witness from attending or giving testimony at any trial, proceeding or inquiry authorized by law, is guilty of a Class A misdemeanor.' " *Id.* at 106 (quoting WIS. STAT. § 940.42). The defendant was charged with battering a woman and her daughter and had sent at least seven letters from jail to the woman attempting to persuade her and her daughter not to testify. He was charged and convicted with 14 counts of intimidating a witness, 2 counts based on each letter. *Id.* He contended the charges were multiplicitous and violated the legislature's intent.

¶17 But while the statutory language is similar, Wisconsin's common law approach to the unit of prosecution is much different than ours. Wisconsin presumes the legislature intended multiple punishments and requires " 'clear indication to the contrary.' " *Id.* at 113 (quoting *State v. Anderson*, 219 Wis. 2d 739, 751, 580 N.W.2d 329 (1998)). In Washington, by contrast, "[u]nless the legislature clearly and unambiguously intends to turn a single transaction into multiple offenses, the rule of lenity requires a court to resolve ambiguity in favor of one offense." *Jensen*, 164 Wn.2d at 949 (citing *Adel*, 136 Wn.2d at 634). Given that difference, *Moore* is not helpful. The Court of Appeals also reasoned that unless each new conversation is separately chargeable, the defendant will have no incentive to stop attempting to tamper with a witness. But if we adopt that

reasoning, the corollary is that each conversation is a separate crime and, in this case for example, could lead to as many as 1,200 separate crimes. Such an interpretation could lead to absurd results, which we are bound to avoid when we can do so without doing violence to the words of the statute. *Wright v. Jeckle*, 158 Wn.2d 375, 380-81, 144 P.3d 301 (2006) (citing *Glaubach v. Regence BlueShield*, 149 Wn.2d 827, 833, 74 P.3d 115 (2003)). It seems unlikely the legislature intended that a person could be prosecuted for over a thousand crimes under the circumstances presented here.

¶18 Our determination might be different if Hall had changed his strategy by, for example, sending letters in addition to phone calls or sending intermediaries, or if he had been stopped by the State briefly and found a way to resume his witness tampering campaign. But those facts are not before us.

IV

¶19 Double jeopardy forbids the entry of multiple convictions for the same offense. A defendant may be convicted of multiple counts for the same offense arising out of the same course of conduct as long as each charge represents a separate unit of prosecution. We have a multistep analytical approach to determine the unit of prosecution. As always, we first look to the statute to glean the intent of the legislature. Then we look to the statute's history, and finally to the facts of the particular case. If there is still doubt, we apply the rule of lenity in favor of a single unit. In this case, we hold the plain language of the statute reveals that the legislature intended to criminalize inducing "a" witness not to testify or to testify falsely. We hold, under the facts of this case, Hall committed one crime of witness tampering, not three. However, we recognize that the facts of a different case may reveal more than one unit of prosecution. We do not reach whether or when additional units of prosecution, consistent with this opinion, may be implicated if additional

attempts to induce are interrupted by a substantial period of time, employ new and different methods of communications, involve intermediaries, or other facts that may demonstrate a different course of conduct. We reverse the Court of Appeals and remand for resentencing.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, SANDERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.