FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 32

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45393-2-II |
| Respondent, | |
| v. | |
| CODY HOWARD JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Cody Johnson appeals his convictions and sentence for two counts of felony harassment and two counts of misdemeanor harassment. Johnson argues that his four harassment convictions were based on one unit of prosecution, and therefore violated double jeopardy. He also challenges the calculation of his offender score, arguing that five 1990 Oregon convictions included in the offender score were not comparable to Washington felonies and also should have washed out.

The State concedes that Johnson's four harassment convictions were based on only one unit of prosecution, and that three of the convictions must be vacated. We accept the State's concession. However, the State argues that on resentencing Johnson cannot challenge his offender score because he waived any challenge in the original sentencing process. We disagree and hold that Johnson can challenge his offender score on remand.

Accordingly, we affirm one of the felony harassment convictions, vacate the other three harassment convictions, and remand for resentencing. We also hold that on remand Johnson will

be allowed to challenge his offender score. Because we remand for resentencing, we need not address the merits of Johnson's offender score arguments.

## FACTS

Johnson lived near Justin Bingley in rural Thurston County. On the evening of February 12, 2013, Bingley heard Johnson yelling across the street and called the police. The police told Bingley that they were unable to help him because Johnson was not on Bingley's property.

When Bingley went outside a few minutes later, Johnson continued to yell at him. Johnson stated that he would meet Bingley in front of his house with his guns and knives. Bingley called the police again and went outside to watch Johnson. At or around this time, Johnson came onto Bingley's property. Johnson angrily yelled at Bingley that he was going to break Bingley's neck and kill Bingley's family. Bingley was scared and felt that the situation was getting out of control. The police advised Bingley to move inside, so he stepped inside and locked his glass storm door, which allowed him to continue watching Johnson.

Johnson yelled that Bingley had killed his (Bingley's) daughter and buried her in his yard. Johnson stated that he would be coming to dig up Bingley's daughter. And Johnson warned Bingley to be careful because he could easily get into an accident with his truck. At some period during this altercation, Johnson accused Bingley of being a pedophile or a rapist. Johnson also intermittently reached into his pants pockets and Bingley was concerned that he had a knife or gun. This incident, which involved Johnson yelling threats at Bingley, continued for 30 to 45 minutes.

The State charged Johnson with two counts of felony harassment and two counts of misdemeanor harassment. Following a jury trial, Johnson was found guilty on all four counts.

2

At sentencing, Johnson's counsel agreed that the State's listed criminal history form was correct. There is no evidence in the record that either the State or Johnson addressed whether Johnson's prior criminal convictions were comparable to Washington convictions, and the trial court apparently did not engage in a comparability analysis. The sentencing court calculated Johnson's offender score at 12, and sentenced him to 60 months in prison.

Johnson appeals.

## ANALYSIS

### A.    DOUBLE JEOPARDY

Johnson argues that his four counts of harassment were based on one unit of prosecution, and therefore his convictions violate his right against double jeopardy. The State concedes that the four convictions did violate double jeopardy, and we accept the State's concession.

The Fifth Amendment to the United States Constitution provides that no "person be subject for the same offense to be twice put in jeopardy of life or limb." Mirroring this federal constitutional guarantee, article I, section 9 of the Washington Constitution provides, "No person shall ... be twice put in jeopardy for the same offense." Under these provisions, a defendant can be charged with multiple charges arising from the same conduct, but double jeopardy prohibits multiple convictions for the same conduct. *State v. Hall*, 168 Wn.2d 726, 729-30, 230 P.3d 1048 (2010). We review double jeopardy claims de novo. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 979-80, 329 P.3d 78 (2014).

Whether or not a defendant is facing multiple convictions for the same conduct depends on the unit of prosecution. *Hall*, 168 Wn.2d at 730. A unit of prosecution may either be an act

or a course of conduct. *Id.* at 731. Our approach to analyzing a unit of prosecution involves three steps:

> [T]he first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present.

*State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007) (quoting *State v. Bobic*, 140 Wn.2d 250, 263, 996 P.2d 610 (2000)). If the legislature fails to define the unit of prosecution or its intent is unclear, under the rule of lenity any ambiguity must be resolved against allowing a single incident to support multiple convictions. *State v. Tvedt*, 153 Wn.2d 705, 711, 107 P.3d 728 (2005).

Washington's harassment statute provides:

> A person is guilty of harassment if: (a) [w]ithout lawful authority, the person knowingly threatens: (i) [t]o cause bodily injury immediately or in the future to the person threatened or to any other person . . . [and] (b) [t]he person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

RCW 9A.46.020(1)(a)-(b). The statute does not define the unit of prosecution. At best, the legislature's intent regarding the unit of prosecution is unclear. However, the language used to define the operative criminal conduct in RCW 9A.46.020 – to "knowingly threaten" – is not inherently a single act. *State v. Vidales Morales*, 174 Wn. App. 370, 386-87, 298 P.3d 791 (2013). As a result, the unit of prosecution for harassment can be a course of conduct rather than a single act. *See id.*

Here, Johnson communicated multiple threats to cause bodily harm, but they were directed to a single identified person at a single time and place. Under these circumstances, we hold that this incident gave rise to a single unit of prosecution.

Because the State concedes, and we agree, that the evidence supports only one offense, we must reverse three of Johnson's harassment convictions. Where two or more convictions for the same offense constitute double jeopardy, the trial court should enter judgment on the greater offense and vacate the lesser offenses. *See State v. Turner*, 169 Wn.2d 448, 459, 238 P.3d 461 (2010). We affirm Johnson's conviction for one count of felony harassment, but reverse Johnson's conviction for the second count of felony harassment and both counts of misdemeanor harassment and remand for resentencing.[1]

B.    CALCULATION OF OFFENDER SCORE

Johnson argues that the trial court erred in calculating his offender score because (1) his five 1990 Oregon convictions were not comparable to Washington felonies and should not have been included in his offender score, and (2) the five 1990 Oregon convictions should have been washed out. The State argues that Johnson waived his right to challenge the comparability or washout status of those convictions on remand by stipulating to his Oregon convictions at sentencing. We disagree. And because we remand for resentencing on a single felony harassment conviction based on double jeopardy, we need not address the merits of Johnson's comparability and washout arguments.

---

[1] Johnson argues in the alternative that he was denied his right to a unanimous verdict because the trial court failed to give a unanimity instruction as to the separate acts alleged. Because we reverse on double jeopardy grounds, we do not address this issue.

A defendant's offender score, together with the seriousness level of his current offense, dictates the standard sentencing range used in determining his sentence. RCW 9.94A.530(1). A prior conviction from another state is included in a defendant's offender score only if the foreign crime is comparable to a Washington felony. *See id.*; RCW 9.94A.525(3). The State bears the burden of proving by a preponderance of the evidence the existence and comparability of the out-of-state offenses. *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

Notwithstanding the State's usual burden of proof, a trial court can include a defendant's out-of-state convictions in his offender score where the defendant affirmatively acknowledges the existence and comparability of the prior convictions. *State v. Mendoza*, 165 Wn.2d 913, 927, 205 P.3d 113 (2009), *overruled on other grounds*, *State v. Jones*, ___ Wn.2d ___, 338 P.3d 278 (2014); *see also State v. Ross*, 152 Wn.2d 220, 233, 95 P.3d 1225 (2004). The State argues that such an acknowledgement also constitutes a waiver of the right to challenge the inclusion of those convictions at resentencing.

The State's argument is inconsistent with the general rule allowing both the defendant and the State to present additional evidence and argument regarding prior convictions at resentencing. "On remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented." RCW 9.94A.530(2); *see also Jones*, 338 P.3d at 283.

Further, the "mere failure to object to a prosecutor's assertions of criminal history does not constitute such an acknowledgement." *Mendoza*, 165 Wn.2d at 928. Here, Johnson agreed to the State's articulation of his criminal history. However, he did not state either way whether

6

his Oregon convictions had been properly included in his offender score. Therefore, Johnson did not affirmatively acknowledge that his five Oregon convictions were comparable, did not wash out, or were correctly included in his offender score.

We hold that Johnson did not waive his arguments regarding the inclusion of his five 1990 Oregon convictions in his offender score, and that he will be able to raise his comparability and washout arguments on remand.[2] The State also will be allowed to present additional evidence regarding Johnson's prior convictions on remand.

We affirm one of the felony harassment convictions, vacate the other three harassment convictions, and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
JOHANSON, C.J.

_____
LEE, J.

---

[2] Johnson argues in the alternative that if his comparability argument was waived, his defense counsel rendered ineffective assistance of counsel by not challenging the inclusion of his Oregon convictions in his offender score. Br. of Appellant at 27-29. Because we hold that Johnson did not waive this argument, we need not address this claim.