IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  34535-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AVERY QUINN LATHAM, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — We address a tragic story of violence toward a woman that ended

with her survival against odds.  Avery Latham appeals his convictions for two charges of

attempted first degree murder on the basis that his two attempts to kill the same victim

constituted only one crime.  He also requests resentencing on the basis that the trial court

erred in scoring his offender score.  We hold that the trial court did not abuse its

discretion in either ruling and affirm the convictions and sentence.

FACTS

The State prosecutes Avery Latham for attempted murder of Katelyn Diricco,

among other crimes, under an inexplicable set of circumstances that include the

miraculous endurance of Diricco.  On December 27, 2014, Diricco resided in a Spokane

abode with her boyfriend and other tenants.  On this wintry night, Diricco returned home

around 10:00 p.m., retired to her bedroom located in the basement, and entered bed to

warm herself. While in the bed, Latham, who Diricco had never met, ambled downstairs, laid on the bed with her, introduced himself, and attempted to engage in pleasantries. Latham twice touched Diricco, and both times Diricco said no and removed his hand from her body. A nervous Diricco told Latham that he gave her "the heebees" and that she intended to relocate upstairs to sleep on the couch. Report of Proceedings (RP) at 216.

Before Katelyn Diricco exited the bed, Avery Latham placed both hands around Diricco's throat and strangled her while repeatedly telling Diricco that she would stay with him. Latham's tight grasp silenced Diricco's attempts to scream. Within one minute and after exhaling a gasp of air, Diricco lost consciousness. To prevent Diricco from regaining cognizance, Latham removed his t-shirt and wrapped it around her neck. Latham then concluded Diricco was dead.

Avery Latham placed Katelyn Diricco's body in a sleeping bag, carried the corpus upstairs, exited the residence, and placed Diricco inside a recycling bin located in the backyard of the dwelling. We do not know the activity of Latham during the next two hours. After this passage of time, he pushed the sepulcherian recycle bin through an alleyway for two blocks before dumping Diricco's body in the snow near a vacant home. Latham turned Diricco's body onto her back and twice slit her throat from ear to ear with a knife. He deemed Diricco already deceased but desired to guarantee the demise.

Miraculously, Katelyn Diricco survived and awoke at an unidentified time later

2

that night in the snow. A frantic Diricco looked for help and eyed porch lights shining at a nearby home. Diricco ran to the home. A woman answered her knock on the door to find Diricco crying, bleeding, and clenching her throat. The woman called 911, and emergency personnel ferried Diricco to the hospital.

After discharge from the hospital, Katelyn Diricco identified, from a Facebook account, Avery Latham as the man who entered the basement. Police questioned Latham during a series of interviews. Latham confessed to the crime and took police to Diricco's residence and the alleyway, where officers recovered evidence, including the deadly knife.

## PROCEDURE

The State of Washington charged Avery Latham with two counts of attempted first degree murder, one with a deadly weapon enhancement, one count of second degree assault, and a count of first degree kidnapping. The State charged one count of attempted murder for Latham's strangling of Katelyn Diricco in the basement bedroom and the other count of attempted murder for slashing Diricco's throat in the alley. Latham entered a plea of not guilty by reason of insanity and waived his right to a jury trial.

During trial, Avery Latham described hearing voices since achieving fifteen years of age. One voice, known as Quin, directed Latham to kill Katelyn Diricco. Latham testified that he did not wish to kill Diricco, but Quin employed Latham's hands to murder the woman. Quin coached him during the attempted killing. According to

3

Latham, Quin also instructed Latham to dispose of the body and threatened to kill Latham if he did not comply. A frightened Latham believed Quin would slay him because Quin earlier choked Latham until Latham almost lost consciousness. Latham averred that, after Latham dumped Diricco's body in the alleyway, Quin expressed pleasure and commended Latham for a job well done. During trial, Latham testified that he slit Diricco's throat in the alleyway "just to make sure" of the death and to "'finish it.'" RP at 414.

A defense psychiatrist diagnosed Avery Latham as schizophrenic and opined, during trial, that Latham did not understand the nature and quality of his acts. The State of Washington's expert disagreed and deemed Latham a malingerer. At the conclusion of testimony, the trial court concluded that, regardless of whether Latham suffered from schizophrenia, he understood the nature and quality of his acts because he understood their outcome. The trial court thus rejected the insanity defense and convicted Latham on all charged accounts.

At sentencing, Avery Latham requested that the assault conviction and one attempted murder conviction be vacated because the multiple convictions violated double jeopardy. Latham also contended that all four convictions comprised the same criminal conduct and should be scored as a single crime. The State and the trial court agreed that the second degree assault conviction merged with the attempted murder conviction since both relied on the same act of strangulation. The trial court, however, denied the request

4

to merge the two attempted murder counts because of different methods utilized in the two attempts. The court also denied scoring the two attempted murder counts as the same criminal conduct since the attempts did not occur at the same time or place or with the same intent.

The trial court imposed a standard range consecutive sentence of 190 months' confinement for each attempted murder count, 55 months' confinement for the kidnapping, and 24 months' confinement for the deadly weapon enhancement. The sentencing court imposed a total sentence of 459 months' confinement.

LAW AND ANALYSIS

Double Jeopardy

The trial court convicted Avery Latham with two counts of attempted first degree murder. On appeal, Latham claims double jeopardy principles preclude his conviction on both counts. He does not forward the independent, but related doctrine of merger. We reject Latham's argument and hold that his two convictions do not violate double jeopardy jurisprudence.

Both the federal and state constitutions prohibit a person from being punished twice for the same offense, although within constitutional constraints the legislature may define crimes and punishments as it sees fit. *State v. Smith*, 177 Wn.2d 533, 545, 303 P.3d 1047 (2013); *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). Washington's double jeopardy clause offers the same protection as the federal

constitution. *State v. Womac*, 160 Wn.2d 643, 650, 160 P.3d 40 (2007).

Avery Latham does not argue that the legislature could not, if it wished, criminalize two distinct acts of attempted murder within a course of continuing threats. He argues the relevant statutes, however, only impose one crime on him for his ongoing efforts. Thus, his argument presents a question of statutory construction rather than application of constitutional rules.

When a defendant is convicted of multiple violations of the same statute, the double jeopardy question focuses on what unit of prosecution the legislature intended as the punishable act under the statute. *State v. Westling*, 145 Wn.2d 607, 610, 40 P.3d 669 (2002). Stated differently, we look to the legislature's intent under the relevant statute as to what constitutes the punishable act. *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998). A unit of prosecution can be either an act or a course of conduct. *State v. Hall*, 168 Wn.2d 726, 731, 230 P.3d 1048 (2010). If the legislature fails to define the unit of prosecution or its intent is unclear, under the rule of lenity any ambiguity must be resolved against turning a single transaction into multiple offenses. *State v. Hall*, 168 Wn.2d at 730. The unit of prosecution rule protects the accused from overzealous prosecution. *State v. Turner*, 102 Wn. App. 202, 210, 6 P.3d 1226 (2000).

When conducting a unit of prosecution analysis for the purpose of double jeopardy:

[T]he first step is to analyze the statute in question. Next, we review the statute's history. Finally, we perform a factual analysis as to the unit of prosecution because even where the legislature has expressed its view on the unit of prosecution, the facts in a particular case may reveal more than one "unit of prosecution" is present.

*State v. Hall*, 168 Wn.2d at 730 (quoting *State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007) (citing *State v. Bobic*, 140 Wn.2d 250, 263-66, 996 P.2d 610 (2000)).

RCW 9A.32.030(1)(a) codifies first degree murder. The statute states:

A person is guilty of murder in the first degree when . . . [w]ith a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person.

RCW 9A.28.020(1) codifies attempts and declares:

A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime.

Thus, for purposes of this appeal, we ask what unit of prosecution the legislature intended to punish by proscribing a substantial step toward causing the death of another with premeditated intent.

Avery Latham argues attempt, as an inchoate crime, comprises a continuing offense notwithstanding different acts or steps taken to accomplish the end result. Applying this argument to attempted first degree murder, Latham contends that the State may not convict him of separate counts of attempted murder based on different steps taken to achieve that result because, despite taking different steps, the intent throughout the various actions remained the same. He sought the death of Katelyn Diricco. Latham

7

emphasizes two decisions, *State v. Varnell*, 162 Wn.2d 165 (2007) and *State v. Bobic*, 140 Wn.2d 250 (2000), involving the inchoate crimes of conspiracy and solicitation to support his argument. In both cases, the Washington Supreme Court based the unit of prosecution on the defendant's intent.

We find *State v. Boswell*, 185 Wn. App. 321, 340 P.3d 971 (2014) more apropos than *Varnell* and *Bobic*. Boswell involves attempts to commit a crime, rather than conspiracy or solicitation.

In *State v. Boswell*, Michael Boswell raised the same argument as Avery Latham and forwarded the same Supreme Court decisions. This court clarified that *Varnell* and *Bobic* do not stand for the proposition that the defendant's intent controls the unit of prosecution for all inchoate crimes. In *Boswell*, the State charged two counts of attempted first degree murder for conduct on the same day against the same victim. Boswell first attempted to kill his girlfriend by poisoning her tea. An unknown amount of time later, Boswell shot his companion in the head. The girlfriend survived and Boswell attributed the homicidal acts to his attempts of taking his own life, which efforts went awry and coincidentally each time harmed his girlfriend instead.

On appeal, Michael Boswell argued that the legislature intended to punish the intent to murder once formed, while the State argued the legislature intended to punish each substantial step taken to complete the crime. This court rejected Boswell's argument because it would result in a person only being charged with attempted murder

8

once against a particular victim, regardless of how many substantial steps or attempts the person makes on the victim's life. Nevertheless, this court did not agree with the State either that each act taken could be a chargeable offense because it would allow the State to arbitrarily charge an unlimited number of counts based on each step taken, no matter how miniscule the step. This court found middle ground and grounded the unit of prosecution for attempted murder on a course of conduct.

In addressing double jeopardy violations for a course of conduct, the *Boswell* court stated the proper analysis asks whether a course of conduct is continuing or "whether there are facts that make each course of conduct separate and distinct." *State v. Boswell*, 185 Wn. App. at 331. Relevant factors include the method used to commit the crime, the elapsed time between two courses of conduct, and whether the initial course of conduct was interrupted, failed, or abandoned. Because Boswell's first attempt at taking his girlfriend's life failed, because a period of time separated the first attempt and the second attempt, and because Boswell employed different methods to cause her death, the court held the two convictions represented two units of prosecution. The convictions did not violate double jeopardy.

*State v. Kinney*, 125 Wn. App. 778, 779, 106 P.3d 274 (2005) also assists in our resolution of Avery Latham's appeal. *Kinney* held that two attempted murder charges were "'separate and distinct'" when one attempt utilized poison and the other attempt involved smothering. *State v. Kinney*, 125 Wn. App. at 779.

9

We follow *Boswell* and *Kinney*, whose facts parallel Avery Latham's attempts to slay Katelyn Diricco. Latham first tried to murder Katelyn Diricco by strangulation and the encounter occurred in the basement where Diricco lived. To Latham's knowledge, he had succeeded. He believed Diricco to be dead. More than one hour passed before Latham tried to dispose of Diricco's body. During this disposal, he slit Diricco's throat to guarantee the killing. Latham utilized a different method to kill Diricco the second time. Because the two events occurred in different places at distinct times and utilized different methods, the two acts represented two units of prosecution.

We note Avery Latham's perspicacious contention that a ruling favoring the State promotes a murderer's overkilling of the victim during the first attempt so that the offender will not be charged with two counts of attempted murder. We question whether slayers engage in such thoughts and conduct but deem such an argument better addressed to the state legislature.

Sentencing Offender Score

Avery Latham also assigns error to the sentencing court's refusal to score the two convictions for attempted first degree murder and the conviction for first degree kidnapping as one crime for purposes of sentencing. Even when double jeopardy or merger rules do not prohibit convictions for two crimes, Washington law may allow the sentencing court to consider the crimes as one crime for purposes of calculating the defendant's offender score, which impacts the defendant's length of sentence.

10

We review a trial court's ruling on whether multiple offenses constitute the same criminal conduct for purposes of sentencing for an abuse of discretion or misapplication of the law. *State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993). A court abuses its discretion when the record supports only one conclusion on whether crimes constitute the same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d 531, 537-38, 295 P.3d 219 (2013). When the record adequately supports either conclusion, the matter lies in the court's discretion. *State v. Aldana Graciano*, 176 Wn.2d at 538.

Under a section of the Sentencing Reform Act of 1981, chapter 9.94A RCW, two crimes constitute the same criminal conduct when they require "the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). If the defendant fails to prove any of these three elements, the crimes are not the same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d at 540. Deciding whether crimes involved the same time, place, and victim often involves factual determinations. *State v. Aldana Graciano*, 176 Wn.2d at 536. Crimes may involve the same criminal intent if they were part of a continuing, uninterrupted sequence of conduct. *State v. Porter*, 133 Wn.2d 177, 186, 942 P.2d 974 (1997). But, when an offender has time to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act, and makes the decision to proceed, he or she has formed a new intent to commit the second act. *State v. Munoz-Rivera*, 190 Wn. App. 870, 889, 361 P.3d 182 (2015); *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997).

11

We first analyze whether the two attempted first degree murders could be scored separately and then determine whether the first degree kidnapping conviction may be scored discretely from the attempted first degree murder convictions. Avery Latham first argues that the underlying acts that formed the basis for the two attempted murder charges occurred at the same time, place, and served the same criminal intent.

Avery Latham deems *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987) controlling. James Dunaway carjacked a vehicle and kidnapped two women inside the car. Dunaway brandished a gun and told the women to drive toward Seattle and give him their cash on hand. Once in Seattle, Dunaway told one of the women to enter a bank and retrieve more money. When the woman did not return, Dunaway told the other woman remaining inside the car to move so he could drive. On appeal, the court addressed whether a kidnapping and robbery charge encompassed the same criminal conduct when committed against the same victim. Despite the fact that the kidnapping and robbery occurred over a period of time, the court held that Dunaway committed the two crimes at the same time and place.

Avery Latham asks this court to follow *Dunaway*'s analysis and hold that the two attempted murders, although occurring in different geographic locations, took place at the same time and location. Latham also contends that he possessed the same intent for both attempted murders and that he performed the strangulation and throat cutting for the identical purpose of ending Katelyn Diricco's life.

12

We consider *State v. Dunaway* unhelpful.  James Dunaway performed a continuous act when he robbed and kidnapped the women all while in the car over a period of time.  Avery Latham repeatedly portrays the attempts to murder as a continuous course of conduct connected sequentially without interruption.  The facts do not support this characterization.  The trial evidence established that Latham committed both attempts at least two hours apart.  After thinking he had succeeded in killing Katelyn Diricco the first time in the basement, Latham owned two hours, during which to pause and reflect.  He possessed the opportunity to cease criminal activity, but he chose to proceed by forming anew the intent to kill.  The second effort to murder Diricco occurred hours later in a discrete setting.  Thus, the placement and timing were not the same for the two acts.

Some evidence may suggest that Avery Latham did not form a new criminal intent and lacked the capability of forming a new intent, let alone any intent.  Nevertheless, the trial court sits in the best position to make this determination.

Avery Latham next argues his kidnapping and attempted murder charges encompass the same criminal conduct.  A person is guilty of kidnapping in the first degree if he or she intentionally abducts another person with the intent to "facilitate commission of any felony or flight thereafter."  RCW 9A.40.020(1)(b).  "Abduct" means "to restrain a person by . . . secreting or holding him or her in a place where he or she is not likely to be found."  RCW 9A.40.010(1).  Thus, first degree kidnapping requires an intentional abduction with intent to facilitate the commission of a felony, here attempted

13

first degree murder. Attempted first degree murder, however, requires the specific intent to cause the death of another person. RCW 9A.32.030; RCW 9A.28.020. Thus, the two crimes necessitate discrete intents. Because the two crimes do not fulfill the criminal intent element of the same criminal conduct statute, we need not address the time and place elements of the sentencing statute.

## CONCLUSION

We affirm Avery Latham's convictions for two counts of attempted first degree murder and affirm his sentence for the two crimes and other crimes. We deny the State an award of costs on appeal.

Fearing, J.

WE CONCUR:

Korsmo, J.

Pennell, A.C.J.