243 P.3d 941 (2010)
STATE of Washington, Respondent,
v.
Dedrick Demond THOMAS, Appellant.
No. 37112-0-II.
Court of Appeals of Washington, Division 2.
December 2, 2010.
Rebecca Wold Bouchey, Attorney at Law, Mercer Island, WA, for Appellant.
Michelle Luna-Green, Pierce Co. Pros. Attorney, Tacoma, WA, for Respondent.
*942 PENOYAR, C.J.
¶ 1 Dedrick Demond Thomas appeals his eight witness tampering convictions, arguing that his multiple telephone calls to a single witness should be treated as one unit of prosecution for double jeopardy purposes. Applying State v. Hall, 168 Wash.2d 726, 230 P.3d 1048 (2010), we agree and reverse and remand to the superior court for resentencing.

Facts
¶ 2 The State charged Thomas with first and second degree assault of his girl friend, Victoria Montgomery.[1] On January 3, 2007, Montgomery testified against Thomas on the State's behalf. From January 6 through 9, Thomas had 29 telephone conversations with Montgomery from the Pierce County Jail attempting to persuade her to change her testimony.
¶ 3 During the course of these telephone calls, Thomas convinced Montgomery to write a letter to his attorney in which she recanted her previous testimony and stated that Thomas's cousin actually assaulted her. In the letter, she explained that she lied because Thomas's cousin put a gun to her head and her child's head and that she was afraid for her life. After defense counsel shared a copy of Montgomery's letter with the State, authorities began to investigate Thomas's telephone calls from the jail. Ultimately, the defense did not call Montgomery to testify at trial.
¶ 4 At the close of the assault trial, the State charged Thomas with eight counts of witness tampering under RCW 9A.72.120(1)(a) and four counts of violating a no contact order under RCW 26.50.110(1). During his subsequent trial, the State played the recording of Thomas's calls to Montgomery for the jury. The trial court admitted a chart documenting these calls. On August 23, 2007, the jury convicted Thomas on all counts.
¶ 5 On November 8, 2007, the trial court sentenced Thomas to 365 days of confinement for each count of violating a no contact order and 60 months of confinement for each witness tampering conviction, each concurrent with each other and with his misdemeanor convictions.
¶ 6 Thomas appealed, challenging only his eight witness tampering convictions. We affirmed in an August 25, 2009, published decision, applying Division One's decision in State v. Hall, 147 Wash.App. 485, 196 P.3d 151 (2008), reversed, 168 Wash.2d 726, 230 P.3d 1048. Eight months after we decided Thomas, our Supreme Court reversed Division One's Hall decision. See Hall, 168 Wash.2d 726, 230 P.3d 1048. In the interim, Thomas timely sought discretionary review in the Supreme Court, which stayed consideration of Thomas's petition pending the court's decision in Hall. After deciding Hall, our Supreme Court lifted the stay in Thomas's case and issued an order granting Thomas's petition for review and remanding the case to us for reconsideration in light of the Supreme Court's Hall decision. See State v. Thomas, 169 Wash.2d 1006, 234 P.3d 210 (2010). We now comply with that directive.[2]

analysis
¶ 7 Determining the appropriate unit of prosecution is a question of law that we review de novo. Hall, 168 Wash.2d at 729, 230 P.3d 1048. A defendant may face multiple charges arising from the same conduct, but double jeopardy forbids entering multiple convictions for the same offense. Hall, 168 Wash.2d at 729-30, 230 P.3d 1048. Whether a defendant faces multiple convictions for the same crime turns on the unit of prosecution. Hall, 168 Wash.2d at 730, 230 P.3d 1048.
¶ 8 Hall controls this case. In Hall, as in this case, while the defendant was in jail awaiting trial, he made numerous (1,200) telephone calls to a witness trying to convince her not to testify or to testify falsely. *943 Hall, 168 Wash.2d at 729, 230 P.3d 1048. The State charged Hall with four counts of witness tampering and a jury convicted Hall on three of those counts. Hall, 168 Wash.2d at 729, 230 P.3d 1048. Division One affirmed, and the Supreme Court granted review. Hall, 168 Wash.2d at 729, 230 P.3d 1048.
¶ 9 As in the present case, the question in Hall was "whether witness tampering is a continuing offense or whether it is committed anew with each single act of attempting to persuade a potential witness not to testify or to testify falsely." Hall, 168 Wash.2d at 730, 230 P.3d 1048. The Hall court noted the appropriate analytical framework for determining the unit of prosecution:
We have a multistep analytical approach to determine the unit of prosecution. As always, we first look to the statute to glean the intent of the legislature. Then we look to the statute's history, and finally to the facts of the particular case. If there is still doubt, we apply the rule of lenity in favor of a single unit.
168 Wash.2d at 737, 230 P.3d 1048.
¶ 10 The witness tampering statute provides in relevant part:
(1) A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding ... to:
(a) Testify falsely or, without right or privilege to do so, to withhold any testimony....
(b) Absent himself or herself from such proceedings....
RCW 9A.72.120(1). "A unit of prosecution can be either an act or a course of conduct." Hall, 168 Wash.2d at 731, 230 P.3d 1048 (citations omitted).
¶ 11 In Hall, our Supreme Court agreed with the defendant's view that "the evil the legislature has criminalized is the attempt to `induce a witness' not to testify or to testify falsely. The number of attempts to `induce a witness' is secondary to that statutory aim, which centers on interference with `a witness' in `any official proceeding' (or investigation)." 168 Wash.2d at 731, 230 P.3d 1048 (quoting RCW 9A.72.120(1)). The Hall court held that "[t]he offense is complete as soon as a defendant attempts to induce another not to testify or to testify falsely, whether it takes 30 seconds, 30 minutes, or days." 168 Wash.2d at 731, 230 P.3d 1048. Although the court agreed with the State's view that tampering with a witness is a choate crime, complete when a single attempt of tampering is made, and requiring no repetition, that characteristic, however, "does not reveal the unit of prosecution." Hall, 168 Wash.2d at 734, 230 P.3d 1048.
¶ 12 The Hall court held, "[t]he plain language of the statute supports the conclusion that the unit of prosecution is the ongoing attempt to persuade a witness not to testify in a proceeding." 168 Wash.2d at 734, 230 P.3d 1048. In Hall, "the course of conduct was continuous and ongoing, aimed at the same person, in an attempt to tamper with her testimony at a single proceeding." 168 Wash.2d at 736, 230 P.3d 1048. The Hall court held that under those circumstances, "Hall committed one crime of witness tampering, not three." 168 Wash.2d at 737, 230 P.3d 1048.
¶ 13 The same is true here. Thomas's numerous telephone calls to Montgomery to persuade her to recant her testimony was a continuing course of conduct aimed at the same witness in a single proceeding and amounts to one unit of witness tampering. See Hall, 168 Wash.2d at 737, 230 P.3d 1048. Accordingly, we reverse seven of Thomas's eight convictions for witness tampering and remand for resentencing.
I concur: VAN DEREN, J.
QUINN-BRINTNALL (concurring).
¶ 14 I concur because under State v. Hall, 168 Wash.2d 726, 230 P.3d 1048 (2010), and the specific facts of this case, I am compelled to do so. I write separately to caution against extending Hall's witness tampering unit of prosecution to cases that contain substantially different facts.
¶ 15 Combining temporally separate and escalating tampering actions together can distort the impact of a defendant's actions. From the victim's/witness's perspective, every *944 time he/she is unexpectedly contacted by the defendant with another argument, attack, or demand intended to influence his/her testimony or induce them to refuse to honor a subpoena, it is a new separate potentially disturbing experience. Moreover, although not present here, each contact may be more insistent and threatening than the last. The Hall court apparently acknowledged this when it explicitly stated that it did "not reach whether or when additional units of prosecution, consistent with this opinion, may be implicated by a substantial period of time, employ new and different methods of communication, involve intermediaries, or other facts that may demonstrate a different course of conduct." 168 Wash.2d at 737-38, 230 P.3d 1048 (emphasis added).
¶ 16 In addition, I note that the Hall analysis is confusing because it conflicts with the definition of "same criminal conduct." A sentencing court does not treat tampering convictions that relate to events that took place at different times as the same criminal conduct for sentencing purposes. Two or more crimes constitute the "same criminal conduct" for purposes of sentencing when each is committed (1) with the same criminal intent, (2) at the same time and place, and (3) against the same victim. RCW 9.94A.589(1)(a) (emphasis added). The definition of "same criminal conduct" is narrowly construed and requires proof of all three elements to support a "same criminal conduct" determination. State v. Vike, 125 Wash.2d 407, 410, 885 P.2d 824 (1994).
¶ 17 Treating a defendant's temporally separated tampering actions as the same crime is inconsistent with (1) the long-standing charging principles that require demarcations by time and initiation, (2) the executive prosecutor's authority to determine the appropriate charges and, (3) the sentencing court's authority to determine the appropriate standard range sentence.
¶ 18 Accordingly, although I question the application of the Hall court's analysis in cases with substantially different facts than Hall, I concur with the majority that Hall's analysis is appropriate on the facts of this case.
We concur: QUINN-BRINTNALL and VAN DEREN, JJ.
NOTES
[1] The State also charged Thomas with a third count of assault for pulling a knife on another man and felony harassment for making threats against the man while on the phone with Montgomery's mother.
[2] By separate order, this court has withdrawn the August 25, 2009, published opinion in this case.