FILED
COURT OF APPEALS
DIVISION II

2014 JAN 22 AM 9: 19

STATE OF WASHINGTON

BY

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44042-3-II |
| Respondent, | |
| v. | |
| DEDRICK DEMOND THOMAS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Dedrick Thomas appeals his sentence for witness tampering. He argues that the trial court incorrectly concluded that an out-of-state failure to appear conviction was factually comparable to a Washington bail jumping conviction. We agree and remand for resentencing consistent with this opinion.[1]

## FACTS

In August 2007, a jury convicted Thomas on eight counts of witness tampering alleged to have occurred between January 6 and 9, 2007. After initially affirming his sentence, we reversed after our Supreme Court granted Thomas's petition for review and remanded the case for reconsideration. *State v. Thomas*, 158 Wn. App. 797, 799-800, 243 P.3d 941 (2010) (*Thomas I*). We remanded for resentencing on the ground that multiple calls to a single witness should have been treated as one unit of prosecution. *Thomas I*, 158 Wn. App. at 802.

---

[1] A commissioner of this court initially considered this appeal as a motion on the merits under RAP 18.14 and then referred it to a panel of judges.

On remand in April 2011, the trial court dismissed seven of the eight counts and resentenced Thomas. The trial court calculated the new sentence using an offender score that included two Arkansas convictions, one for theft (2000) and another for failing to appear (2001). Thomas again appealed and in an unpublished opinion we reversed the sentence on the ground that the trial court erred in failing to perform an on-the-record comparability analysis of the out-of-state convictions before including them in the offender score. *State v. Thomas*, noted at 169 Wn. App. 1006 (2012) (*Thomas II*).

On October 5, 2012, the trial court again resentenced Thomas. At the sentencing hearing, it conducted a comparability analysis of the two convictions. The State did not submit additional documentation but stated that it was relying on documentation filed under separate cause number and "incorporated last time into the record in this case." Verbatim Report of Proceedings (VRP) (Oct. 5, 2012) at 4. These documents were the felony informations for both charges and the judgment and disposition orders.

The trial court examined the Arkansas theft conviction and compared the Arkansas theft elements to the Washington theft statute. It concluded, "Based on the elements of the two crimes, I'm going to find that theft in Arkansas that Mr. Thomas was convicted of and theft in Washington are [legally] comparable and that finding is by a preponderance of the evidence." VRP (Oct. 5, 2012) at 9.

The court then turned to the failure to appear conviction. It acknowledged that the elements were "slightly different," in that Washington had "the mental state requirement of knowing," which the Arkansas statute lacked. VRP (Oct. 5, 2012) at 10. It, however, concluded that the convictions were "factually comparable." VRP (Oct. 5, 2012) at 10. Consequently, the

trial court used these convictions in calculating Thomas's sentence. Thomas appeals the inclusion of the failure to appear conviction in his offender score.

ANALYSIS

We review the trial court's classification of out-of-state crimes and the trial court's calculation of a defendant's offender score de novo. *State v. Labarbera,* 128 Wn. App. 343, 348, 115 P.3d 1038 (2005); *State v. Bergstrom,* 162 Wn.2d 87, 92, 169 P.3d 816 (2007). "When prior out-of-state convictions are used to increase an offender score, the State must prove the conviction would be a [comparable] felony under Washington law." *Labarbera,* 128 Wn. App. at 348; RCW 9.94A.525(3).

An out-of-state conviction may not be used to increase the defendant's offender score unless the State proves it is equivalent to a felony in Washington. *State v. Weiand,* 66 Wn. App. 29, 31-32, 831 P.2d 749 (1992). If the State fails to establish a sufficient record, then the sentencing court lacks the necessary evidence to determine if the out-of-state convictions should be included in the offender score. *State v. Ford,* 137 Wn.2d 472, 480-81, 973 P.2d 452 (1999). If the State provides sufficient evidence, the sentencing court must conduct the comparison on the record. *Labarbera,* 128 Wn. App. at 349.

A foreign conviction is equivalent to a Washington offense if there is either legal or factual comparability. *In re Pers. Restraint of Lavery,* 154 Wn.2d 249, 255-58, 111 P.3d 837 (2005). A foreign offense is legally comparable if "the elements of the foreign offense are substantially similar to the elements of the Washington offense."[2] *State v. Thiefault,* 160 Wn.2d 409, 415, 158 P.3d 580 (2007). If the elements of the two statutes are not identical or if the

---

[2] The State does not dispute that the statutes are not legally comparable. It, however, argues that the trial court correctly concluded that that Arkansas conviction was factually comparable.

foreign statute is broader than the Washington definition of the particular crime, the trial court must then determine whether the offense is factually comparable. *State v. Morley,* 134 Wn.2d 588, 606, 952 P.2d 167 (1998).

A conviction is factually comparable where the defendant's conduct would have violated a comparable Washington statute. *In re Lavery,* 154 Wn.2d at 255. The State bears the burden of providing sufficient evidence to prove the comparability of prior out-of-state convictions by a preponderance of the evidence. *Ford,* 137 Wn.2d at 479-80. "In making its factual comparison, the sentencing court may rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt." *Thiefault,* 160 Wn.2d at 415 (citing *In re Lavery,* 154 Wn.2d at 258; *State v. Farnsworth,* 133 Wn. App. 1, 22, 130 P.3d 389 (2006), *modified on remand,* 2007 WL 1223669; and *State v. Ortega,* 120 Wn. App. 165, 171-74, 84 P.3d 935 (2004), *modified on remand,* 131 Wn. App. 591, 128 P.3d 146 (2006), *review denied,* 160 Wn.2d 1002 (2007)). "When the sentencing court incorrectly calculates the standard range ..., remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway." *State v. Parker,* 132 Wn.2d 182, 189, 937 P.2d 575 (1997).

Thomas's Arkansas information charging him with failure to appear defined his conduct as having

> FAILED TO APPEAR for trial on 1 count of Residential Burglary (B Felony), in violation of ACA § 5-39-201; after having been lawfully set at liberty on the condition he appear in the Circuit Court on January 8, 2001, he failed to appear being without reasonable excuse, in violation of ACA § 5-54-120, all against the peace and dignity of the State of Arkansas.

Ex. 2. At the time he committed the crime, the former Arkansas Code, section 5-54-120 (1975),

provided:

> (a) A person commits the offense of failure to appear if he or she fails to appear without reasonable excuse subsequent to having been:
>
> . . . .
>
> (2) Lawfully set at liberty upon condition that he or she appear at a specified time, place, and court.

Washington, before July 1, 2001, defined bail jumping as follows:

> Any person having been released by court order or admitted to bail with the requirement of a subsequent personal appearance before any court of this state, and who knowingly fails to appear as required is guilty of bail jumping.

Former RCW 9A.76.170(1) (1983). Bail jumping is a felony when the person is being held on

felony charges. Former RCW 9A.76.170(3)(a)-(c). The "knowingly" element in Washington's

(former) bail jumping statute required the State to "prove beyond a reasonable doubt that [the

defendant] knew, or was aware that he was required to appear at the [scheduled] hearing." *State

v. Ball*, 97 Wn. App. 534, 536, 987 P.2d 632 (1999) (quoting *State v. Bryant*, 89 Wn. App. 857,

870, 950 P.2d 1004 (1998), *review denied*, 137 Wn.2d 1017 (1999)).

Thomas's information provides that he was released "on the condition he appear in the

Circuit Court on January 8, 2001," that "he failed to appear" and that he further lacked a

"reasonable excuse." Ex. 2. In Arkansas, a reasonable excuse may include being released

without being advised in open court or by mail of the future appearance condition. *Stewart v.

State*, 362 Ark. 400, 208 S.W.3d 768, 771 (2005). Because Thomas pled guilty to the amended

information, which sets out both that he was released upon the "condition he appear in the

Circuit Court on January 8, 2001," and that he lacked a reasonable excuse for failing to appear,

the facts as charged by the State support that Thomas was aware that he was required to appear

in court on January 8, 2001, but failed to do so. *See Ball,* 97 Wn. App. at 536. Thus, the trial court did not err in concluding that this offense was factually comparable to the Washington bail jumping offense based on the facts alleged in the information.

The remaining issue is whether the facts alleged in the information or other documents before the trial court amount to an admission by Thomas of the facts charged. *See State v. Thomas,* 135 Wn. App. 474, 144 P.3d 1178 (2006) (in order to establish factual comparability, the State must prove those facts that, when alleged, have not been admitted by the defendant or proved by the State), *review denied,* 161 Wn.2d 1009 (2007). The trial court quoted portions of the information when conducting its factual comparability analysis. At sentencing, Thomas focused on whether the charged facts were factually comparable to the Washington bail jumping crime and did not specifically argue that these facts were incorrect or that he never admitted them when entering his plea.[3] A challenge to the calculation of the defendant's offender score for sentencing purposes may be raised for the first time on appeal, however, including a challenge to classification of out-of-state convictions. *Ford,* 137 Wn.2d at 477; *State v. McCorkle,* 137 Wn.2d 490, 973 P.2d 461 (1999).

The court records show that Thomas entered a "negotiated plea of guilty or nolo contendere" to the failure to appear charge. Ex. 1 at 2. The State did not provide any documentation to show which type of plea Thomas actually entered, so we examine both types. In *State v. Releford,* we held that where the charging state's law provides that a guilty plea represents "an admission of the facts alleged by the government in the charging document,"

---

[3] The trial court, however, noted that in prior hearings, Thomas "didn't affirmatively acknowledge that those were his convictions." VRP (Oct. 5, 2012) at 6. It also noted that on remand for resentencing, "He needed to either affirmatively say, yes, I was convicted of those things, and/or the Court needed to do, on the record, the analysis. VRP (Oct. 5, 2012 at 11).

these facts can be relied upon by a sentencing court conducting a comparability analysis. 148 Wn. App. 478, 488, 200 P.3d 729 (2009) (noting that in Oklahoma, a guilty plea "admits the facts pleaded in the Information"), *review denied*, 166 Wn.2d 1028 (2009). This reasoning has been extended to nolo contendere or no contest pleas. In *State v. Olsen*, for example, we concluded that under California law, a "no contest" plea was considered "the same" as a guilty plea. 175 Wn. App. 269, 309 P.3d 518, *review granted in part*, 178 Wn.2d 1018 (2013); *see also generally State v. Heath*, 168 Wn. App. 894, 900-01, 279 P.3d 458 (2012) (considering whether a Florida no contest plea with withheld adjudication counts as a "conviction"), *review denied*, 177 Wn.2d 1008 (2013). Because California law treats a guilty plea as an admission to every element of the charged crime, we concluded that under the facts set out in the *Olsen* information, a no contest plea to a California terroristic threats charge was factually comparable to a Washington harassment conviction. *Olsen*, 309 P.3d 525-26.. Unlike in *Releford* or *Olsen*, however, the State here provides no Arkansas authority to establish that a defendant entering either a plea of guilty or a nolo contendere plea admits all charged facts.

Arkansas CrR 24.6 provides:

> The court shall not enter a judgment upon a plea of guilty or nolo contendere without making such inquiry as will establish that there is a factual basis for the plea.

With respect to Arkansas pleas under this rule:

> The requirement of a factual basis for a plea does not require that the appellant be proven guilty, but merely that there was sufficient evidence from which the trial court could conclude that the appellant would be found guilty if he elected to proceed to trial. A factual basis may be established by addressing the accused, the defense counsel, the prosecutor, or all three. The purpose of the factual basis requirement is to prevent an accused from pleading guilty on the mistaken assumption that his conduct was unlawful when it was not.

*O'Connor v. State*, 367 Ark. 173, 238 S.W.3d 104, 107 (2006) (internal citations omitted). Thus, because an Arkansas trial court taking a guilty plea may ascertain the factual basis "by addressing the accused, the defense counsel, the prosecutor, or all three," it does not appear that a defendant is required to admit the facts as charged by the State when entering a guilty plea. *O'Connor*, 238 S.W.2d at 107. Moreover, for nolo contendere pleas, a defendant is not required to admit that he committed the charged acts:

> [The defendant] was not required to admit his guilt or that he committed the acts alleged by the prosecution in order to demonstrate knowledge that his conduct was unlawful. To satisfy the requirements of the rule, the trial court only had to determine that the prosecution could present sufficient evidence for a conviction in order to determine that there was substantial compliance with Rule 24.6, not that the defendant was in accord or agreement with that evidence. It was simply not necessary, under those circumstances, for appellant, who entered a plea of *nolo contendere,* to admit that he committed the acts as described.

*O'Connor*, 238 S.W.3d at 107-08.

It is not clear from the evidence before the trial court that the sentencing judge complied with Arkansas CrR 24.6 when Thomas entered his plea. And, this rule requires only that the sentencing judge establish a factual basis for the plea rather than having a defendant admit to the facts charged by the State or having the State prove the facts. Consequently, because the record lacks any basis for concluding that Thomas admitted to the charged facts in the failure to appear information when he entered his plea, we remand for resentencing.

Thomas raises additional issues in his statement of additional grounds (SAG). He first questions why his sentence "is not ran [sic] concurrent with another case that I have that occurred at a totally different time." At his most recent resentencing, the parties discussed running his present sentence consecutive to "Cause No. 06-1-04327-0." RP (Oct. 5, 2012) at 11. This cause number corresponds to two 2007 convictions for assaults (first degree and second

degree) that occurred in August 2006 and were sentenced in March 2007. The prosecutor noted that at Thomas's initial sentencing in November 2007 and first resentencing in April 2011, the court imposed consecutive sentences. Thomas requested the court impose concurrent sentences. The court imposed consecutive sentences.

> RCW 9.94A.589(3) provides:
>
> whenever a person is sentenced for a felony that was committed while the person was not under sentence for conviction of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that they be served consecutively.

Here, Thomas committed the assaults that are the subject of the 2006 cause number in August 2006. He committed the witness tampering crimes that are the subject of the instant appeal in January 2007. In March 2007, he was sentenced for first and second degree assault. And he was originally sentenced on the witness tampering conviction in November 2007. Thus, RCW 9.94A.589 provides for concurrent sentences unless the trial court "expressly orders" consecutive sentences. Here, the trial court had the statutory authority to and did order consecutive sentences.

Thomas also states that he wants to challenge the comparability analysis and amount of criminal history points he received for prior convictions. We have already addressed Thomas's Arkansas failure to appear conviction. We briefly address his Arkansas theft conviction and conclude that it is legally comparable to a Washington offense.[4]

---

[4] In *Thomas II*, we examined the theft conviction and concluded, "Although it appears that Thomas's Arkansas theft conviction was legally comparable to a Washington felony, the sentencing court failed to conduct the requisite comparability analysis on the record," noted at 169 Wn. App. 1006, 2012 WL 2501089, at *4.

At the time of Thomas's conviction, Arkansas defined theft as follows:

> (a)     A person commits theft of property if he: ·
> (1)     Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof; or
> (2) Knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof.
> . . . . .
> [(b)](2)  Theft of property is a Class C felony if:
> (A)  The value of the property is less than two thousand five hundred dollars ($2,500) but more than five hundred dollars ($500); or
> (B)  The property is obtained by threat; or
> (C)  The property is a firearm valued at less than two thousand five hundred dollars ($2,500); or
> (D)  The property is a credit card . . . or credit card account number.
> [(b)](3)  Theft of property is a Class C felony if the property is livestock, and the value of the livestock is in excess of two hundred dollars ($200).

Former ACA § 5-36-103 (1997).  In 2000, when Thomas committed the Arkansas theft offense, all of the conduct proscribed in former ACA § 5-36-103 constituted a felony in Washington state.  At that time, Washington defined "[t]heft" as:

> (a)  To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
> (b)  By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
> (c)  To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services.

Former RCW 9A.56.020(1) (1975).  "Theft in the first degree," a class B felony, was defined in 2000 as theft of:

> (a)   Property or services which exceed(s) one thousand five hundred dollars in value other than a firearm as defined in RCW 9.41 .010; or
> (b)   Property of any value other than a firearm as defined in RCW 9.41.010 taken from the person of another.

10

Former RCW 9A.56.030(1) (1995). "Theft in the second degree," a class C felony, was defined

as theft of:

> (a)     Property or services which exceed(s) two hundred and fifty dollars in value other than a firearm as defined in RCW 9.41.010, but does not exceed one thousand five hundred dollars in value; or
> (b)     A public record, writing, or instrument kept, filed, or deposited according to law with or in the keeping of any public office or public servant; or
> (c)     An access device; or
> (d)     A motor vehicle, of a value less than one thousand five hundred dollars.

Former RCW 9A.56.040(1) (1995). Thomas's Arkansas theft conviction was legally comparable

to a Washington felony because "the elements of the foreign offense are substantially similar to

the elements of the Washington offense." *Thiefault,* 160 Wn.2d at 415. The trial court,

therefore, correctly counted this offense when calculating Thomas's offender score.

The remaining two points in Thomas's offender score come from the two previously

mentioned Washington felony assault convictions. The parties discussed these convictions

during the April 21, 2011 sentencing, during which the prosecutor provided copies of the

judgment and sentence for these convictions. RCW 9.94A.525(7) governs the calculation of

offender scores, providing, "If the present conviction is for a nonviolent offense . . . count one

point for each adult prior felony conviction." Thus, Thomas properly received 1 point for each

prior felony conviction.[5]

---

[5] The two prior assaults were sentenced on the same day. The record does not show whether the original sentencing court for these convictions or the present sentencing court conducted an analysis whether the convictions qualified as the same criminal conduct. RCW 9.94A.525(5)(a)(i). Nevertheless, the same criminal conduct issue, because it involves factual determinations and an exercise of discretion by the trial court, cannot be raised for the first time on appeal. *State v. Nitsch,* 100 Wn. App. 512, 523, 997 P.2d 1000, *review denied,* 141 Wn.2d 1030 (2000).

No. 44042-3-II

We remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, A.C.J.

We concur:

_____
Hunt, J.

_____
Penoyar, J.