FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 43

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44365-1-II |
| Respondent, | |
| v. | |
| MICHAEL TODD BOSWELL, | PUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Michael Todd Boswell guilty of two counts of attempted first degree murder. Boswell appeals, arguing that (1) double jeopardy bars his conviction for two counts of attempted murder, (2) the trial court erred by refusing to instruct the jury on attempted third degree assault as a lesser included offense, and (3) the jury instructions on attempted first degree murder omitted an essential element of the crime. Because we hold that the unit of prosecution for attempted murder is based on a course of conduct, Boswell's convictions for two counts of attempted murder do not violate double jeopardy. We further hold that third degree assault is not a lesser included offense of attempted murder and that the jury instructions included all essential elements of attempted first degree murder. Accordingly, we affirm.

FACTS

Boswell and Jessica Fix had been in a romantic relationship. About a month before November 14, 2011, Fix told Boswell that she wanted to end their relationship. Boswell became very upset and was crying, so Fix decided to stay with him. Just prior to November 14, Fix again discussed ending their relationship, but Boswell again became upset and Fix did not end the relationship.

Early in the morning on November 14, Fix returned home from working the prior evening, and Boswell made her peppermint tea. After drinking the tea, Fix became nauseous, began vomiting, and then fell asleep on the living room couch.

Later, Fix woke up with a loud ringing in her ears and blood dripping from her head. She saw Boswell sitting on the opposite side of the couch holding a gun. Fix left the house and went to the hospital. At the hospital, Fix was treated for a brain hemorrhage and liver failure. Doctors determined that Fix's head wound was consistent with a gunshot wound and that her liver failure was caused by an extremely high dose of acetaminophen.

The State charged Boswell with two counts of attempted first degree murder. Count 1 alleged that Boswell "on or about November 14, 2011, with a premeditated intent to cause the death of another person . . . did an act which was a substantial step toward the commission of that crime." Clerk's Papers (CP) at 62. Count 2 alleged that Boswell "on or about November 14, 2011, at a separate time than the acts charged in Count 1, with a premeditated intent to cause the death of another person . . . did an act which was a substantial step toward the commission of that crime." CP at 62.

No. 44365-1-II

At trial, Boswell testified that Fix's injuries were caused by his failed suicide attempts. First, Boswell crushed a large amount of Tylenol and methocarbamol in a glass and then used a second glass as a shaker to help dissolve the pills in the liquid. Then, he inadvertently put Fix's tea in the second glass containing a large amount of Tylenol residue. He became ill after consuming the medication he mixed for himself but failed in his suicide attempt. After his failed suicide attempt with the Tylenol, Boswell decided to attempt to take his own life with a gun. Boswell's arm slipped when he attempted to shoot himself, and he accidentally shot Fix in the head.

Boswell requested that the trial court instruct the jury on third degree assault as a lesser included offense of the attempted first degree murder predicated on the shooting. The trial court concluded that third degree assault was not a lesser included offense of attempted first degree murder and did not instruct the jury on third degree assault.

The trial court gave the following "to convict" instruction on the attempted first degree murder charge in count 1:

> To convict the defendant of the crime of Attempted Murder in the First Degree as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about November 14, 2011, the defendant did an act that was a substantial step toward the commission of Murder in the First Degree;
> (2) That the act was done with the intent to commit Murder in the First Degree; and
> (3) That the act occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 80. The "to convict" instruction on the attempted first degree murder charge in count 2 contained the same elements. CP at 81.

The jury found Boswell guilty of both counts of attempted first degree murder. Boswell appeals.

## ANALYSIS

### A.    DOUBLE JEOPARDY

Boswell argues that double jeopardy bars his convictions for two counts of attempted first degree murder because the unit of prosecution for crimes of attempt is the intent to commit the crime and not each substantial step toward committing that crime. We disagree.

The United States and Washington Constitutions prohibit double jeopardy. U.S. CONST. amend. V; WASH. CONST. art 1, § 9. We review alleged double jeopardy violations de novo. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 979-80, 329 P.3d 78 (2014). "The prohibition on double jeopardy generally means that a person cannot be prosecuted for the same offense after being acquitted, be prosecuted for the same offense after being convicted, or receive multiple punishments for the same offense." *Villanueva-Gonzalez*, 180 Wn.2d at 980.

Although Boswell alleges a constitutional error, determining whether Boswell's convictions constitute multiple punishments for the same offense requires determination of legislative intent and presents a question of statutory interpretation. *Villanueva-Gonzalez*, 180 Wn.2d at 980. "The legislature is tasked with defining criminal offenses, and the prohibition on double jeopardy imposes '[f]ew, if any, limitations' on that power.'" *Villanueva-Gonzalez*, 180 Wn.2d at 980 (quoting *Sanabria v. United States*, 437 U.S. 54, 69, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978)).

When a defendant has multiple convictions under the same statutory provision, we determine whether there is a double jeopardy violation by asking "'what act or course of conduct has the Legislature defined as the punishable act.'" *Villanueva-Gonzalez*, 180 Wn.2d at 980 (quoting *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998)). Boswell was convicted of two counts of attempted first degree murder under RCW 9A.28.020 and RCW 9A.32.030. Therefore, we must determine what act or course of conduct the legislature intended as the punishable act under RCW 9A.28.020 and RCW 9A.32.030. *State v. Turner*, 102 Wn. App. 202, 206, 6 P.3d 1226 (2000) (citing *Adel*, 136 Wn.2d at 634), *review denied*, 143 Wn.2d 1009 (2001).

RCW 9A.28.020(1) states:

A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime.

And, RCW 9A.32.030 states, in part:

(1) A person is guilty of murder in the first degree when:
(a) With a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person.

Therefore, attempted first degree murder requires (1) intent to commit first degree murder and (2) a substantial step toward committing first degree murder.

Boswell argues that the unit of prosecution for attempted murder is defined by the defendant's intent to commit the murder and relies on cases analyzing the unit of prosecution for other inchoate offenses such as solicitation and conspiracy. Specifically, Boswell relies on *State v. Varnell*, 162 Wn.2d 165, 170 P.3d 24 (2007) (unit of prosecution for solicitation) and *State v. Bobic*, 140 Wn.2d 250, 996 P.2d 610 (2000) (unit of prosecution for conspiracy) to support his proposition that a defendant may only be convicted of one count of attempted first degree murder

for every act taken to further the intent to kill a person.[1] These cases, however, do not support Boswell's proposition because the unit of prosecution for solicitation and conspiracy is different than the unit of prosecution for attempted murder.

*Varnell* and *Bobic* did not determine the unit of prosecution for solicitation and conspiracy based exclusively on the defendant's intent. Rather, they focus on the actual *act* that is necessary to commit solicitation or conspiracy. In *Varnell*, the defendant was convicted of five counts of solicitation to commit murder based on one conversation in which he asked an undercover officer to kill four people. 162 Wn.2d at 167-68. Our Supreme Court reversed, reasoning that the unit of prosecution for solicitation was the act of promoting or facilitating a crime rather than the crime the defendant was soliciting. *Varnell*, 162 Wn.2d at 169. Therefore, the defendant could only be convicted of one count of solicitation based on one conversation regardless of how many crimes the defendant solicited during that conversation. *Varnell*, 162 Wn.2d at 170.

Similarly, in *Bobic* the defendants were convicted of one count of conspiracy for each crime they conspired to commit (conspiracy to commit first degree theft, conspiracy to commit first degree possession of stolen property, and conspiracy to commit first degree trafficking in

---

[1] Boswell also relies on *State v. Luther*, 157 Wn.2d 63, 134 P.3d 205, *cert. denied*, 549 U.S. 978 (2006), for the proposition that our Supreme Court has already established that attempt is defined by intent rather than action. But, Boswell's reliance on *Luther* is misplaced. In *Luther*, the court held that there was sufficient evidence to support a conviction for attempted possession of child pornography if the State provided that the defendant believed he was possessing child pornography or clearly intended to obtain child pornography, regardless of whether the State proved that the sexually explicit images were actually children. 157 Wn.2d at 73-74. A large portion of the *Luther* analysis rested on the fact that the defendant's argument was essentially an impossibility defense which the legislature has specifically stated is not a defense to criminal attempt. *Luther*, 157 Wn.2d at 73-74. Therefore, *Luther* provides no guidance in determining the appropriate unit of prosecution for attempted first degree murder.

stolen property). 140 Wn.2d at 256. Again, our Supreme Court focused on the *act* necessary to commit conspiracy—an agreement to engage in a criminal enterprise. *Bobic*, 140 Wn.2d at 265. Therefore, our Supreme Court held that the appropriate unit of prosecution for conspiracy is the agreement to engage in a criminal enterprise, not the number of crimes that could be committed in the course of carrying out that criminal enterprise. *Bobic*, 140 Wn.2d at 265.

Thus, contrary to Boswell's assertion, *Varnell* and *Bobic* do not stand for the proposition that the unit of prosecution for all inchoate crimes is based on the defendant's intent. Rather, they stand for the proposition that the unit of prosecution for inchoate crimes is the act necessary to support the inchoate offense, not the underlying crime.

Boswell argues that if the unit of prosecution for attempt is based on the act rather than the intent, the State will be able to charge a defendant with one count for each substantial step taken toward commission of the crime (e.g., separate counts for each shot fired in an attempt to kill someone or procuring a gun, driving to the scene, waiting at the scene, etc.). But, as the State points out, Boswell's interpretation also leads to an absurd result. Under Boswell's unit of prosecution analysis, a defendant could only ever be charged with one count of attempted murder against one victim, regardless of how many attempts the defendant makes on the victim's life. For example, as the State points out, Boswell could be released from prison, make another attempt on Fix's life, and, as long as he does not succeed, he could not be charged with another count of attempted first degree murder. It is clear that the legislature did not intend such a result. *The Boeing Co. v. Doss*, 180 Wn. App. 427, 437, 321 P.3d 1270 (2014) ("'We do not interpret statutes to reach absurd and fundamentally unjust results.'") (quoting *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 426, 869 P.2d 14 (1994)); *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)

(We do not interpret statutes to reach "'absurd results'") (quoting *State v. Delgado*, 148 Wn.2d 723, 733, 63 P.3d 792 (2003)).

Although we agree with Boswell that the unit of prosecution for attempted first degree murder should not allow the State to arbitrarily charge an unlimited number of counts based on each substantial step taken toward the commission of first degree murder, we also agree with the State that Boswell's interpretation cannot be what the legislature intended. Therefore, we adopt the analysis used to determine the unit of prosecution for offenses that involve a continuing course of conduct. Under this analysis, double jeopardy does not bar Boswell's convictions for two counts of attempted first degree murder.

*State v. Hall*, 168 Wn.2d 726, 230 P.3d 1048 (2010), and *State v. Chouap*, 170 Wn. App. 114, 285 P.3d 138 (2012) provide a reasonable analytical structure to determine the appropriate unit of prosecution for first degree attempted murder. In *Hall*, the defendant was convicted of three counts of witness tampering after calling a witness over 1,200 times in an attempt to convince her not to testify against him. 168 Wn.2d at 729. Our Supreme Court held that the unit of prosecution for witness tampering is the "ongoing attempt to persuade a witness not to testify in a proceeding." *Hall*, 168 Wn.2d at 734. Because the defendant's conduct was continuous, aimed at a single person, and meant to tamper with her testimony in a single proceeding, there was only one unit of prosecution. *Hall*, 168 Wn.2d at 736. However, our Supreme Court noted circumstances in which multiple units of prosecution could be present:

> Our determination might be different if Hall had changed his strategy by, for example, sending letters in addition to phone calls or sending intermediaries, or if he had been stopped by the State briefly and found a way to resume his witness tampering campaign.

*Hall*, 168 Wn.2d at 737.

In *Chouap*, the defendant was convicted of two counts of attempting to elude a police vehicle based on events that occurred during the same evening. 170 Wn. App. at 118-21. We determined that the defendant's convictions did not violate double jeopardy because the "second pursuit was separated from the first by time, by Chouap's return to lawful driving, and by different pursuing police officers." *Chouap*, 170 Wn. App. at 125.

Reading *Hall* and *Chouap* together, the proper analysis to determine the unit of prosecution for crimes involving a course of conduct is whether there are facts that make each course of conduct separate and distinct. Factors that can be considered in addressing whether each course of conduct is separate or distinct include the method used to commit the crime; the amount of time between the two courses of conduct; and whether the initial course of conduct was interrupted, failed, or abandoned. *Hall*, 168 Wn.2d at 737-38.

Here, Boswell engaged in two separate distinct courses of conduct in his attempts to take Fix's life. First, he attempted to poison her by crushing pills, mixing them in tea, and giving the tea to her. After this attempt on Fix's life failed, there was a period of time before Boswell engaged in his second course of conduct. Fix was sleeping and Boswell had a period of time to consider his actions after Fix fell asleep. Then Boswell acquired the gun and shot Fix in the head. Because Boswell employed different methods of attempting to kill Fix, the attempts were separated by a period of time and the second attempt began only after the first attempt had failed, Boswell's two convictions properly represent two units of prosecution. Even Boswell's own testimony supports this analysis. Boswell admitted that his first plan to take his own life was limited to using the Tylenol. It was only after that plan failed that Boswell formulated the plan to use the gun. There

was no evidence that Boswell's original plan included using both the Tylenol and the gun as part of one continuous plan.

Using a course of conduct analysis to determine the appropriate unit of prosecution for attempted first degree murder clearly leads to the most sensible result. It prevents the State from arbitrarily charging multiple counts based on each conceivable substantial step leading up to the commission of the crime, and it allows the State to hold defendants accountable for repeated attempts on one victim's life. Based on this analysis, we hold that Boswell's two convictions for attempted first degree murder do not violate the constitutional prohibition against double jeopardy.

B.    LESSER INCLUDED OFFENSE

Boswell asserts that the trial court erred by refusing to instruct the jury on third degree assault as a lesser included offense. *State v. Harris*, 121 Wn.2d 317, 849 P.2d 1216 (1993), resolves this issue. However, Boswell argues that the rule in *Harris* has been implicitly rejected by subsequent case law applying the *Workman*[2] test to determine lesser included offenses. We disagree.

A defendant is entitled to an instruction on a lesser included offense if two conditions are met:

> First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed.

*State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978) (internal citations omitted). We review the first element of the test, the legal prong, de novo. *State v. LaPlant*, 157 Wn. App. 685,

---

[2] *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

10

687, 239 P.3d 366 (2010). And, we review the second prong of the test, the factual prong, for an abuse of discretion. *LaPlant*, 157 Wn. App. at 687.

In *Harris*, our Supreme Court held that assault is not a lesser included offense of *attempted* murder because, the legal prong of the *Workman* test was not met. 121 Wn.2d at 321. The court explained that under the legal prong "if it is possible to commit the greater offense without committing the lesser offense, the latter is not an included crime." *Harris*, 121 Wn.2d 320 (citing *State v. Bishop*, 90 Wn.2d 185, 191, 580 P.2d 259 (1978)). The court reasoned that, to commit attempted murder, the defendant must take a substantial step toward committing the murder, but that step does not necessarily require the defendant to commit an assault (obviously an element of first degree assault). *Harris*, 121 Wn.2d at 321. *Harris* controls the outcome of this case, and we hold that the trial court did not err by refusing to give Boswell's proposed instruction on third degree assault as a lesser included offense of attempted first degree murder.

Boswell argues that the rule in *Harris* is no longer good law because our Supreme Court has implicitly abrogated the rule announced in *Harris*. Boswell cites primarily to *State v. Berlin*, 133 Wn.2d 541, 947 P.2d 700 (1997), to support his proposition.

Boswell's reliance on *Berlin* is misplaced. Boswell reads *Berlin* as instructing us to consider the crimes as charged when determining whether a lesser included instruction is appropriate; therefore, the analysis in *Harris* is improper because it categorically states that assault cannot be a lesser included offense of attempted murder. Under Boswell's application of *Berlin*, third degree assault is a lesser included offense of attempted murder in this case because, by shooting Fix in the head, Boswell necessarily committed third degree assault. But Boswell's

analysis is based on a misreading of *Berlin*, a misapplication of the law our Supreme Court articulated in *Berlin*, and a conflation of the two prongs of the *Workman* test.

In *Berlin*, the defendant was charged with second degree murder with intentional murder and felony murder charged as alternative means. 133 Wn.2d at 550. Our Supreme Court held that manslaughter can be a lesser included offense of second degree murder. *Berlin*, 133 Wn.2d at 551. In doing so, the court reaffirmed its adherence to the *Workman* test and clarified the application of the legal prong of the test. *Berlin*, 133 Wn.2d at 548, 550-51.

The court explained that under the legal prong of the *Workman* test, the court examines the statutory elements of the crime charged, not the statute as a whole. *Berlin*, 133 Wn.2d at 548. However, this clarification is relevant only so far as the statute under which the defendant is charged presents alternative means of committing the crime. *Berlin*, 133 Wn.2d at 548. Therefore, the rule under *Berlin* is that when a defendant is charged with an alternative means crime, the court determines whether a lesser included offense instruction is appropriate based on the alternative means charged, not the statute as a whole. 133 Wn.2d at 550 ("We emphasize that both the statutory language of RCW 10.61.006 and the language of *Workman* necessitate that we examine the elements of the offense *charged*."). Attempt is not an alternative means crime. Therefore, the clarification articulated in *Berlin* does not apply. *Berlin* does not change or undermine the analysis employed by our Supreme Court in *Harris*.

Furthermore, nothing in *Berlin* stands for the proposition that we are required to examine the elements of the offense based on the alleged facts supporting the charge. Rather, *Berlin* is clear—when examining the legal prong of the *Workman* test we look at the statutory elements of the crime to determine whether each element of the lesser offense is a necessary element of the

charged offense. 133 Wn.2d at 550-51. We do not examine the facts underlying the charge unless we reach the factual prong of the *Workman* test. *Berlin*, 133 Wn.2d at 551. Accordingly, contrary to Boswell's assertion, there is nothing in *Berlin* that supports deviating from the rule or analysis articulated by our Supreme Court in *Harris*. We hold that the trial court did not err in refusing to instruct the jury on third degree assault as a lesser included offense to attempted murder.

C.    JURY INSTRUCTIONS

Finally, Boswell argues that the "to convict" jury instructions omitted an essential element of the crime because the jury instruction failed to include the element of premeditation.[3] We disagree.

We explicitly rejected this argument in *State v. Reed*, 150 Wn. App. 761, 208 P.3d 1274, *review denied*, 167 Wn.2d 1006 (2009). We held that the essential elements of attempt are (1) the specific intent to commit a crime and (2) a substantial step toward committing that crime. *See Reed*, 150 Wn. App. at 772-73. As we explained:

> Reed's argument conflates the intent necessary to prove an attempt with that necessary to prove first degree murder. The State did not charge Reed with completed first degree murder; thus, to prove only an attempt to commit first degree murder, the State was not required to prove that Reed acted with premeditated intent to commit murder, only that he attempted to commit murder.

*Reed*, 150 Wn. App. at 772-73. *Reed* is controlling. The jury instruction properly instructed the jury on the essential elements of attempt. *Reed*, 150 Wn. App. at 774-75.

---

[3] Boswell failed to object to the "to convict" instructions at the trial court. Generally, a party may not raise an issue for the first time appeal. RAP 2.5(a)(3). However, because jury instructions omitting an essential element relieve the State of its burden to prove each element of the crime beyond a reasonable doubt, the error is considered a manifest error affecting a constitutional right that may be raised for the first time on appeal. *State v. Chino*, 117 Wn. App. 531, 538, 72 P.3d 256 (2003).

Boswell asks us to reconsider the decision in *Reed* based on *State v. Vangerpen*, 125 Wn.2d 782, 888 P.2d 1177 (1995). Boswell alleges that *Vangerpen* explicitly states that premeditation is an essential element of attempted first degree murder. We decline Boswell's request.

In *State v. Vangerpen*, 71 Wn. App. 94, 856 P.2d 1106 (1993), *aff'd*, 125 Wn.2d 782, 888 P.2d 1177 (1995), the defendant was charged with attempted first degree murder by an information that stated:

> [T]he defendant Shane Michael Vangerpen in King County, Washington on or about July 20, 1991, with intent to cause the death of another person did attempt to cause the death of Officer D.C. Nielsen, a human being.

71 Wn. App. at 97 n.1. Our Supreme Court held that the information failed to charge the defendant with attempted first degree murder because acting with the intent to cause a death is second degree murder rather than first degree murder. *Vangerpen*, 125 Wn.2d at 791. In other words, *Vangerpen* states that, because of the specific language contained in the information, the State failed to charge the defendant with attempted first degree murder when the information omitted "one of the statutory elements of first degree murder." 125 Wn.2d at 791.

*Vangerpen* does not articulate what the essential elements of attempted first degree murder are. Our Supreme Court has clearly established that the essential elements of criminal attempt are an intent to commit a specific crime and a substantial step toward committing that crime. *See, e.g., State v. DeRyke*, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003). Therefore, an instruction on attempt is not defective for failing to include the essential elements of the attempted underlying crime. *DeRyke*, 149 Wn.2d at 910-11. Because *Vangerpen* addresses whether the language used in the information in that case properly charged the defendant with attempted first degree murder, not what all the essential elements of first degree murder are, *Vangerpen* is not grounds for us to

abandon our decision in *Reed*. Accordingly, Boswell's challenge to the "to convict" instructions fails.

We reject Boswell's contention that the unit of prosecution for attempted first degree murder is defined by the defendant's intent. Instead, we hold that the unit of prosecution for attempted first degree murder is defined by a course of conduct. Under the facts presented here, Boswell's convictions for two counts of attempted first degree murder do not violate double jeopardy. Further, under *Harris*, third degree assault is not a lesser included offense of attempted first degree murder. And, our decision in *Reed* continues to be good law; thus, the "to-convict" instruction did not omit an essential element of the crime. Accordingly, we affirm.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Maxa, J.