# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　Respondent,<br><br>　　v.<br><br>ANGELINO LUCIANO PENA,<br><br>　　　　　　　　Appellant. | No.　46589-2-II<br><br><br><br>UNPUBLISHED OPINION |

MAXA, J. – Angelino Pena appeals his conviction of first degree assault based on the shooting of one of his acquaintances, and also appeals the legal financial obligations (LFOs) imposed as part of his sentence.[1]

We hold that (1) defense counsel's failure to request an inferior degree offense jury instruction on third degree assault did not constitute ineffective assistance of counsel, (2) the trial court did not err in allowing an investigating officer to testify that he was assigned to a regional gang unit, (3) the record does not support Pena's allegations that the prosecutor made statements that constitute misconduct, and (4) Pena waived his claim that the sentencing court erred in imposing LFOs without an individualized assessment of his ability to pay because he did not object in the trial court.  Accordingly, we affirm Pena's conviction for first degree assault and the imposition of LFOs.

---

[1] Pena also was convicted of attempted second degree murder.  The trial court vacated the attempted second degree murder conviction because that conviction and the first degree assault conviction arose from the same criminal conduct and first degree assault carried a higher penalty.

FACTS

On January 26, 2013, Neil Hill, Vincent Burnett, Levi Blomdahl, and Elena Espinoza were using heroin in a hotel room in Vancouver. At 2:00 AM, Espinoza asked Hill to pick up Pena and bring him back to the hotel.

During the drive, Pena pulled out a gun and told Hill that he would shoot him in the stomach if Hill got pulled over by the police. Hill described Pena as intoxicated. While in the car, Pena played with the gun, repeatedly ejecting bullets from the ammunition clip and putting them back in. Hill feared for his life. When he arrived at the hotel, Pena knocked on the door with the butt of his gun, entered carrying the gun, acted belligerently, and appeared intoxicated. Pena continued to play with the gun and pop bullets in and out of the clip. He also passed the gun around to others in the room.

Blomdahl observed that Pena and Burnett were having a disagreement about Pena's brother. Later, Blomdahl was nodding in and out of sleep when he heard a gun fire. He opened his eyes and saw that Burnett had fallen over and was lying on the floor bleeding. He then saw Pena stand up and appear to put the gun in his pocket or waistband.

Burnett suffered permanent impairment because of his injuries. He could not remember who shot him, but he did remember that Pena was at the hotel room, that Pena had a gun, and that the two of them had both good and bad conversations that night about family.

The State charged Pena with second degree attempted murder and first degree assault, each with a firearm enhancement. At trial, Detective Erick Zimmerman, an investigating officer, testified that at the time of his investigation of the shooting he was assigned to the Safe Streets

Task Force and that the task force was a regional gang unit. The trial court overruled Pena's objection to this testimony.

At Pena's request, the trial court gave an instruction on second degree assault. Pena did not propose an inferior degree offense instruction on third degree assault. The jury found Pena guilty of attempted second degree murder and first degree assault.

The trial court vacated the attempted second degree murder conviction because it merged with the assault, and imposed a standard range sentence. The trial court also imposed discretionary LFOs.

Pena appeals his first degree assault conviction and the imposition of LFOs.

ANALYSIS

A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Pena argues that defense counsel's failure to propose an inferior degree offense instruction on third degree assault deprived him of his right to effective assistance of counsel.[2] We disagree.

1.    Legal Principles

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced him. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). To demonstrate

---

[2] Pena also argues that he was entitled to a lesser included instruction for third degree assault on the attempted murder charge. But this court has held that third degree assault is not a lesser included offense of attempted second degree murder. *State v. Boswell*, 185 Wn. App. 321, 340 P.3d 971 (2014), *review denied*, 183 Wn.2d 1005 (2015). Therefore, we address only whether defense counsel was ineffective for failing to request an inferior degree offense instruction to first degree assault.

deficient performance, the defendant must show that, based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). And the law affords trial counsel wide latitude in the choice of tactics. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 736, 16 P.3d 1 (2001).

There is a strong presumption that defense counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. To rebut this presumption, a defendant must demonstrate that there is no conceivable legitimate tactic explaining defense counsel's performance. *Id.*

2. Inferior Degree Offense Instruction

RCW 10.61.003 provides that a jury may find a defendant not guilty of the charged offense but guilty of an offense with an inferior degree. Under this statute, both parties have a statutory right to an inferior degree offense instruction. *State v. Corey*, 181 Wn. App. 272, 276, 325 P.3d 250, *review denied*, 181 Wn.2d 1008 (2014). The party requesting an instruction on an inferior degree offense must show:

> "(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

*State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).

The difference between first degree assault and third degree assault is the required mens rea. First degree assault requires the State to prove that the defendant "with intent to inflict great

bodily harm: assaults another with a firearm." RCW 9A.36.011(1)(a). Third degree assault requires the State to prove that the defendant "[w]ith criminal negligence, cause[d] bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." RCW 9A.36.031(1)(d).

Here, there is no question that third degree assault is an inferior degree offense to first degree assault. And there is evidence that Pena committed only third degree assault, which involves negligent conduct rather than the intentional conduct required for first degree assault. Therefore, Pena was entitled to a third degree assault instruction if he had requested one.

3. Defense Counsel Strategy

Pena argues that defense counsel was deficient in failing to request a third degree assault instruction because the primary defense theory was that the shooting was not intentional. Pena claims that without a third degree assault instruction, the jury's only alternative was to convict him of first degree assault if the jury determined that he negligently shot Burnett.

However, defense counsel's arguments were not so narrow. Defense counsel argued to the jury that (1) the State failed to prove that he was present; (2) if he was present, the State failed to prove that he possessed the gun; (3) if he did possess the gun, the State failed to prove that he fired it; (4) if he did fire the gun, the State failed to prove that the shooting was intentional. A third degree assault instruction was irrelevant for the first three arguments.

Further, by foregoing a third degree assault instruction, defense counsel set up an "all or nothing" scenario. Without a third degree assault instruction, the jury would have had to acquit Pena if it found that he did not intentionally injure Burnett – i.e., if the jury found that Pena's conduct was accidental, negligent, or reckless. In other words, defense counsel may have made a

tactical decision to create doubt that Pena acted intentionally and therefore leave only the possibility of an acquittal. An all or nothing strategy can be a legitimate tactic with regard to lesser included offense or inferior degree offense instructions, and does not amount to ineffective assistance of counsel. *See State v. Breitung*, 173 Wn.2d 393, 398-400, 267 P.3d 1012 (2011); *Grier*, 171 Wn.2d at 43.

We presume that defense counsel made a legitimate tactical decision not to request a third degree assault instruction in order to set up an all or nothing scenario. Accordingly, we hold that Pena's ineffective assistance of counsel claim fails.

B.      GANG TASK FORCE EVIDENCE

Pena argues that the trial court erred in allowing Detective Zimmerman to testify that he was assigned to a gang task force because that evidence was irrelevant and unfairly prejudicial. We disagree.

We review a trial court's rulings on evidentiary matters for an abuse of discretion. *State v. Aguirre*, 168 Wn.2d 350, 361, 229 P.3d 669 (2010). A trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds or reasons. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). A decision is based on untenable reasons if it is based on an incorrect standard or if the facts do not meet the requirements of the correct standard. *Id.*

Detective Zimmerman testified that he was assigned to the Safe Streets Task Force at the time of his investigation and that the task force was a regional gang unit. The State elicited this testimony when establishing Zimmerman's training and experience. Zimmerman did not testify that there was any suspicion of Pena's involvement with gang activity. In fact, Pena successfully

argued that any references to gang culture were irrelevant and the trial court excluded any such evidence.

We hold that the trial court did not abuse its discretion in allowing testimony about Zimmerman's experience and training as a police officer, which included a brief reference to his assignment to the gang task force.

C.      ALLEGED PROSECUTORIAL MISCONDUCT

Pena asserts in a statement of additional grounds (SAG) that the prosecutor engaged in misconduct. We disagree.

First, Pena claims that the prosecutor stated during opening statement and closing argument that this case did not involve a situation where Pena called the police and said the shooting was an accident; instead, Pena claimed he was not there. Pena argues that these statements constituted misconduct. However, he does not cite to the record to support this claim. In fact, the State's opening statement is not part of the record and these statements do not appear in the record of the State's closing argument.

Second, Pena claims that the prosecutor unfairly expressed his personal opinion when he stated that "it's obvious [that] it does not take much to make Mr. Pena angry [and] want to shoot people." SAG at 2. But this statement also is not in the record.

There is no evidence in the record that the prosecutor made the statements that Pena claims constitute misconduct. Therefore, Pena's prosecutorial misconduct arguments fail.

D.      IMPOSITION OF LFOS

The trial court did not make an on the record assessment of Pena's present and future ability to pay before imposing discretionary LFOs. However, Pena did not object to the

No. 46589-2-II

imposition of LFOs in the trial court. We repeatedly have held that a defendant cannot raise this issue on appeal unless he preserved the error below, especially after this court issued its decision in *State v. Blazina*, 174 Wn. App. 906, 301 P.3d 492 (2013), *remanded*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015). *See State v. Lyle*, 188 Wn. App. 848, 852, 355 P.3d 327 (2015). Therefore, we hold that Pena has waived this issue on appeal.

We affirm Pena's conviction and the imposition of LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, J.

JOHANSON, C.J.

8