IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40468-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROBERT LEE TALLEY | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Robert Talley appeals his conviction for attempted premediated murder. He asserts that evidence does not support the conviction. While fleeing from arrest and while standing in a shooter's stance next to a pickup truck, Talley fired numerous shots, at Spokane County Sheriff's Office Deputy Evann Flanagan. Talley then repositioned himself to fire additional shots at Deputy Flanagan. Therefore, we hold the evidence sufficed for a jury to conclude he fired with premeditated intent to kill. We affirm the conviction.

FACTS

Charges against Robert Talley stem from a day and night of drinking and consuming controlled substances and a later police chase that led to shots fired by Talley at a law enforcement officer. On August 2, 2023, Robert Talley began drinking whiskey and Mike's Hard Lemonade shortly after awakening at 7:30 a.m. By 11:30 a.m., he had

finished a fifth of whiskey. Talley then drove his black Chevy Tahoe to ABC Mini Storage in Airway Heights, where he spent five to six hours helping a friend move belongings from a larger shed to a smaller one. He arrived at the sheds with a fifth of Fireball, a fifth of Jack Daniels, and two four-packs of Mike's Hard Lemonade. While assisting his friend, Talley consumed methamphetamine, cocaine, marijuana, and Mike's Hard Lemonade.

After finishing the move of his friend's belongings, Robert Talley drove to the Spokane Tribe Casino. Upon entering the parking lot of the casino, a stranger accosted him to help move her disabled car before it was towed. Talley agreed, hitched the car to his Tahoe's bumper, and towed it to a nearby trailer park. Once there, Talley joined the woman and her boyfriend in smoking methamphetamine for two hours. By the time he left these new consociates around 11:00 p.m., the group had consumed the fifths of Fireball and Jack Daniels and the remaining Mike's Hard Lemonade. He drove in his Chevy Tahoe from the trailer park.

While Robert Talley got drunk and high with his new acquaintances, Spokane County Sheriff's Deputy Evann Flanagan patrolled for a black Chevy Tahoe with stolen license plates. During his graveyard shift, Deputy Flanagan received a "Flock" alert that informed him of an early 2000s black Tahoe traveling northbound on Hayford Road from Walmart in Airway Heights. Report of Proceedings (RP) at 132. The Flock system uses

2

automated license plate reader (ALPR) cameras to identify stolen vehicles. Deputy Flanagan located the black Tahoe near the Northern Quest Casino and initiated a traffic stop by activating his patrol vehicle's overhead lights.

The Chevy Tahoe failed to comply with the patrol car's lights, entered the casino parking lot, made a U-turn, and fled southbound in a northbound lane. During the ensuing pursuit, Deputy Evann Flanagan's car nearly collided head-on with Officer Bryant Baker's Airway Heights police vehicle, which traveled without its emergency lights activated. Due to the danger, Deputy Flanagan terminated the pursuit of the Tahoe. He then attempted to use the Flock system to identify a pattern in the Tahoe's movements.

An hour later, Officer Bryant Baker spotted the Chevy Tahoe at the Airway Heights All Seasons Motel. As Officer Baker alerted other officers to the presence of the Tahoe, the vehicle fled the hotel.

At 12:30 a.m., Deputy Evann Flanagan espied the black Tahoe speeding eastbound on Highway 2 near Longhorn Barbecue in Airway Heights. Flanagan later found the vehicle parked in a cloud of dust behind semi-trailers in the restaurant's parking lot. As he approached the Tahoe in his patrol car, Flanagan saw a male wearing a black sweater and black jeans walking from the Tahoe. At trial, he identified the man as Robert Talley. Talley began walking faster and repeatedly peered over his shoulder as Flanagan's

3

vehicle approached.  When Flanagan activated his emergency lights and siren, Talley fled south onto the property of Geiger Arms Apartments.  Deputy Flanagan lost sight of Talley.

Spokane County Deputy Evann Flanagan drove his patrol vehicle through the backyard of the apartment building to the opposite side of the building's parking lot.  As he turned a corner, he spotted Robert Talley near a red pickup truck.  Talley positioned himself in a standard shooting stance with legs apart and arms extended.  Flanagan eyed a muzzle flash, heard a gunshot, and immediately radioed "shots fired."  RP at 139.

At trial, Deputy Evann Flanagan testified about the events that unfolded as his patrol vehicle came around the corner of the apartment building with its emergency lights activated.

> [STATE]: Can you show us where the shooter is at this point?
> [DEPUTY FLANAGAN]: The shooter is right here positioned behind the engine block of this red truck, and you can see his head right about here by the window.
> [STATE]: And do you see the vehicle here?
> [DEPUTY FLANAGAN]: Yes, just south of right here.
> [STATE]: Did you hear anything at this point?
> [DEPUTY FLANAGAN]: To the best of my recollection, I did not.
> [STATE]: Okay.
> [DEPUTY FLANAGAN]: There was [sic] a lot of different noises going off, such as my radio and things like that, so I don't recall anything specifically on that one.
> [STATE]: Okay.  And tell me when you see the shooter assume the position you described earlier.
> [DEPUTY FLANAGAN]: So I see him here, he ran from behind the

4

vehicle out into the open.

[STATE]: I know it's difficult for the jury to see, but is his arm extended in that picture?

[DEPUTY FLANAGAN]: Yes.

[STATE]: And is this his position when he fired the shot that you heard and saw the muzzle flash?

[DEPUTY FLANAGAN]: Yes.

RP at 145-46.

According to Deputy Evann Flanagan, Robert Talley moved from behind the pickup truck's engine block to the rear of the vehicle and fired additional shots. Flanagan reversed his patrol car to use the building for cover. Talley fled through the parking lot toward Spotted Road. When Deputy Flanagan again saw Talley near Spotted Road, Talley had his arm extended in the direction of Officer Bryant Baker.

During trial, Officer Bryant Baker testified that he assisted Deputy Evann Flanagan during the initial pursuit of Robert Talley. When the pursuit ended, Officer Baker parked his patrol vehicle on the north side of Longhorn Barbecue on Highway 2. While parked, he heard Deputy Flanagan broadcast "shots fired" over the radio. RP at 186. Officer Baker then drove to Deputy Flanagan's location on Spotted Road to assist him. Upon arrival, he observed Talley running toward the southeast side of the apartment building, armed with a handgun.

[STATE]: What, if anything, did he do with his handgun as he went

past you?

[OFFICER BAKER]: When I initially pulled up, he pointed the gun at me. I saw him, he pointed the gun at me, I got in my patrol car, and I went to the rear side of my patrol car, gave him commands, drew my firearm. He pointed again. I went back to the front side of my patrol car and by that time, he ducked down between some vehicles that were parked there and went down to where he parked.

RP at 187.

Deputy Evann Flanagan drove to Spotted Road and noticed Officer Bryant Baker's parked patrol car. Deputy Flanagan saw Robert Talley return to the Tahoe and drive away. Deputy Flanagan reentered his patrol vehicle and pursued Talley eastbound on Highway 2. At times Talley traveled over one hundred miles per hour in the opposite direction of travel.

At the intersection of Highway 2 and I-90, the Chevy Tahoe still traveled eastbound in the westbound lane. The Tahoe entered the I-90 onramp, reached speeds approaching 100 miles per hour, and continued fleeing eastbound in the westbound lanes despite oncoming traffic. The Tahoe exited I-90 at Spokane's Maple Street, continued northbound on Maple, turned east onto Third Avenue, and then proceeded north on Addison Road. At times, the vehicle reached speeds of 50 miles per hour through downtown Spokane.

The Chevy Tahoe next turned east onto Second Avenue. At the intersection of Second Avenue and Lincoln, a law enforcement officer attempted a precision

6

immobilization technique (PIT) maneuver. Robert Talley tried to evade the maneuver, lost control of the Chevy Tahoe, and crashed into a brick building while traveling 48 miles per hour. Talley exited the wrecked Tahoe only after officers deployed chemical munitions to force him from the vehicle.

Detectives later recovered shell casings and bullet fragments from the area where the shooting occurred. Rounds fired from a 9mm handgun used by Talley struck the fender of a nearby Chevy Malibu parked in the side lot of the apartment building, the gravel parking lot behind the building, and the adjacent sidewalk.

PROCEDURE

The State of Washington charged Robert Talley with (1) attempted premeditated murder in the first degree for attempting to cause the death of Deputy Evann Flanagan, (2) first degree assault, (3) second degree assault, (4) attempting to elude a police vehicle, (5) possession of a stolen firearm, and (6) first degree unlawful possession of a firearm. At trial, the superior court dismissed the charge of possession of a stolen firearm for lack of evidence.

At trial, the State showed the jury video footage from Geiger Arms Apartments. Ex. 1. The footage depicted Robert Talley running from behind the apartment building toward its side with Deputy Evann Flanagan pursuing him in Flanagan's patrol vehicle. Talley eventually jaunted into a parking lot at the front of the building and stopped near a

red pickup truck. He then assumed a shooting stance and fired his handgun at Deputy

Flanagan's patrol vehicle. Talley subsequently moved to the rear of the pickup truck and

fired two additional shots toward Deputy Flanagan. Deputy Flanagan responded by

backing his patrol vehicle toward the side of the apartment building, while Talley fled

further into the parking lot.

Under cross-examination at trial, Robert Talley averred that he lacked any

recollection of events occurring after leaving the Airway Heights trailer park.

> [STATE]: So is it your testimony now that you don't remember anything from that day?
> [TALLEY]: My testimony is I don't remember anything after I started later on drinking.
> [STATE]: My question is from 11:30, to when you finished helping Ms. Sweet move, what do you remember? Do you remember if you had any problems moving her?
> [TALLEY]: We were still moving. I was there throughout the afternoon. So I don't — I mean, she didn't bring nothing to my attention that I'm doing something wrong, I mean —
> [STATE]: Sir, your testimony was that you do this all the time. Why is it so much different on this day? If you do this every time, how come today you don't remember anything?
> [TALLEY]: I didn't say I remember stuff the day before when I did it. You never asked me that question. I drink every day, all day, every day.

RP at 408-09.

During closing arguments, the State explained to the jury the legal requirements

for establishing the intent necessary to prove premeditated murder.

> Premeditation must involve more than a moment in point of time.

8

The law requires some time, however long or short, in which a design to kill is deliberately formed. In this case, ladies, and gentleman, once the evidence shows that Mr. Talley was running, he was being chased by the deputy, he got behind the truck, he fired once. Okay. That's the intent to kill. But if he had run away after that, there would be no premeditation. But he didn't run away. He's running back to his Tahoe, he takes the one shot, the deputy is still there. What does he do? He forms that - okay, I'm going to finish this guy. The evidence shows that he takes those steps, he again gets in that shooting position and fires two more shots. More than just a moment in time, ladies, and gentlemen. He formed that intent to kill, moved over and got a better line of sight, and fired two more times, ladies, and gentlemen. That's premeditation.

RP at 516-17.

The jury found Robert Talley guilty on all remaining five counts, including attempted premediated murder. The superior court sentenced Robert Talley to 404 months of confinement.

## LAW AND ANALYSIS

On appeal, Robert Talley only challenges the legal sufficiency of the evidence supporting his conviction for attempted premeditated murder. A claim of insufficient evidence accepts the truth of the State's evidence, along with all reasonable inferences drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Direct evidence need not uphold a jury's verdict; circumstantial evidence suffices. *State v. O'Neal*, 159 Wn.2d 500, 506, 150 P.3d 1121 (2007).

A person commits murder in the first degree when he kills another person with

premeditated intent.  RCW 9A.32.030(1)(a).  Attempted first degree murder requires

"(1) intent to commit first degree murder and (2) a substantial step toward committing

first degree murder."  *State v. Boswell*, 185 Wn. App. 321, 328, 340 P.3d 971 (2014),

*review denied*, 183 Wn.2d 1005 (2015).  Opportunity to deliberate by itself does not

support a finding of premeditation.  Premeditation requires "the deliberate formation of

and reflection upon the intent to take a human life and involves the mental process of

thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time,

however short."  *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995).  Nevertheless,

a wide range of proven facts will support an inference of premeditation.  *State v. Finch*,

137 Wn.2d 792, 831, 975 P.2d 967 (1999).

The State theorized Robert Talley formed premeditated intent during the three to

four seconds he moved from the right side of the pickup truck to the left side and fired

two shots at Deputy Evann Flanagan.  We add that Talley had fired earlier shots at

Flanagan after assuming a shooting stance.  Talley responds that the evidence at best

supports an inference that he attempted to evade arrest rather than intending to murder

Deputy Flanagan.  He does not argue that any intoxication precluded forming intent.  Of

course, Talley's argument poses a false alternative.  Talley could have intended at the

same time to kill Evann Flanagan and evade arrest.

Based on the evidence presented, a reasonable jury could conclude that Robert

Talley intended to kill Deputy Flanagan to avoid apprehension. Sufficient facts

supported the jury's finding of guilt on attempted premeditated murder.

## STATEMENT OF ADDITIONAL GROUNDS

In his additional grounds for review, Robert Talley identifies a statement uttered

by Deputy Evann Flanagan during a post-incident interview. He asserts the statement

casts reasonable doubt on whether Talley aimed at Flanagan or fired into the air. We

have already rejected Talley's challenge to the sufficiency of the evidence. The utterance

does not belie the evidence of Talley's assuming a shooting stance when firing the first

shots and his deliberate movement in order to fire additional shots.

Robert Talley also contends that the trial court prejudiced him when it misspoke

while reading the jury instructions. The court commented:

> The defendant is charged in Count V with possession of a stolen motor vehicle also from on or about August 3rd of 2023. The defendant did knowingly possess a stolen firearm.

SAG, at 4 (Court's Preliminary Instructions).

We also reject this additional ground. Talley's counsel did not object at trial, and

appellate rules generally preclude raising errors on appeal absent an objection. RAP

2.5(a). Moreover, the jury likely did not retain these isolated oral remarks while

disregarding the remaining oral and written instructions. *State v. Kalebaugh*, 183 Wn.2d

578, 586, 355 P.3d 253 (2015).

11

CONCLUSION

We affirm Robert Talley's conviction.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Murphy, J.

_____
Lawrence-Berrey, C.J.